**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent.**

**Charles Dorchy and Frank Winchester, Intervenors.**

**Nos. 84–1674, 84–1727.**

District of Columbia Court of Appeals.

Argued Dec. 5, 1985.

Decided March 27, 1986.

Michael L. Zimmerman, with whom Bruce D. White, Fairfax, Va., was on brief, for petitioner.

Edward E. Schwab, Asst. Corp. Counsel, with whom Inez Smith Reid, Corp. Counsel, John H. Suda, Principal Deputy Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, and Lutz Alexander Prager, Asst. Corp. Counsel, Washington, D.C., were on brief, for respondent.

Mark J. Brice, with whom Joseph H. Koonz, Jr., Carolyn McKenney, Roger C. Johnson and Patrick M. Regan, Landover, Md., were on brief, for intervenor Charles Dorchy.

Peter J. Vangsnes, Washington, D.C., for intervenor Frank Winchester.

Before MACK * and FERREN, Associate Judges, and GALLAGHER, Senior Judge.

## PER CURIAM:

Petitioner Washington Metropolitan Area Transit Authority (WMATA) appeals from decisions of the District of Columbia Department of Employment Services (DOES) awarding workers' compensation benefits to Charles Dorchy and Frank Winchester. WMATA urges here, as it did before DOES, that the statutory term "accidental injury," D.C.Code § 36–301 (12) (1981 & 1985 Supp.), one of the bases for eligibility for compensation coverage, refers only to an injury which results from an unusual occurrence.[1] DOES rejected that interpretation, concluding instead that there is no requirement of an unusual occurrence, and that to show that he or she suffered an "accidental injury" a petitioner need prove only that something unexpectedly went wrong within the human frame.[2] We are satisfied that the interpretation adopted by DOES is reasonable in light of prevailing law and is supported by the legislative history of the District of Columbia workers' compensation statute, D.C.Code §§ 36–301 to –345 (1981 & 1985 Supp.).[3] We therefore affirm.

Frank Winchester began working for WMATA as a bus driver in 1974. In August 1983, Winchester was driving a bus when he quickly turned around in order to tell some passengers not to smoke marijuana or to play radios on the bus. Winchester felt some discomfort in his neck as he continued to drive, and later went to a doctor for treatment. Examination revealed that Winchester had sustained a strain of the cervical muscles, for which he received outpatient physiotherapy. He returned to work the following month.

Charles Dorchy also worked for WMATA, but as a "cleaner shifter." His duties including cleaning, oiling and fueling the buses, changing bus tires, and cleaning the garage. On August 14, 1982, Dorchy was told to stack approximately 14 bus batteries, each weighing between 80 and 100 pounds. After stacking the batteries, Dorchy felt a severe pain in his back. Subsequent examination revealed that he had a

---

* After recusal by *Associate Judge* BELSON, who was a member of the division, *Associate Judge* MACK was chosen by lot to replace him.

1. Defining the term "injury" as used in the Workers' Compensation statute, § 36–301(12) states " 'Injury' means accidental injury or death arising out of and in the course of employment, and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury, and includes an injury caused by the willful act of third persons directed against an employee because of his [or her] employment."

2. DOES, of course, has consistently recognized that, in order to be compensable, the "accidental injury" must "aris[e] out of and in the course of employment," as required by § 36–301(12), quoted in note 1, *supra*. *E.g., Brooks v. Designcraft,* H & AS No. 83–161 (Feb. 7, 1984).

3. WMATA also asserts that the record does not support Dorchy's claim for compensation. Our review of that contention is limited to a determination whether there is substantial evidence in the record supporting the administrative agency's finding. D.C.Code §§ 17–305(b), 1–1510(a)(3)(E) (1981). Our review here reveals that there was ample evidence to support the Department's decision; therefore, we affirm the award of benefits to Dorchy.

ruptured disc. Dorchy worked intermittently between August 1982 and January 1983, at which time he was forced to stop work completely. He returned to work more than a year later.

We begin our inquiry into the interpretation of the term "accidental injury" with a brief review of the history of workers' compensation in the District of Columbia. Prior to 1982, the federal workers' compensation statute, the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950, applied with respect to injuries or deaths of employees in the District of Columbia. D.C.Code § 36–501 (1973). Our courts had repeatedly held that the requirement of "accidental injury" is satisfied "if something unexpectedly goes wrong within the human frame." *Wheatley v. Adler,* 132 U.S.App.D.C. 177, 181 n. 6, 407 F.2d 307, 311 n. 6 (1968), (quoting *Commercial Casualty Insurance Co. v. Hoage,* 64 U.S. App.D.C. 158, 159, 75 F.2d 677, 678, *cert. denied,* 295 U.S. 733, 55 S.Ct. 645, 79 L.Ed. 1682 (1935)). As the United States Court of Appeals pointed out in *Commercial Casualty,* there was no requirement under the Longshoremen's Act that an unusual incident occur, rather "an accidental injury may occur notwithstanding the injured [employee] is then engaged in his [or her] usual and ordinary work." *Commercial Casualty,* 64 U.S.App.D.C. at 159, 75 F.2d at 678. *Accord, Wheatley,* 132 U.S.App. D.C. at 181, 407 F.2d at 311.

In 1979, the District of Columbia Council initiated a series of studies to determine whether the District might be better served by enacting its own workers' compensation legislation. The reports of Councilmembers Willie J. Hardy and Wilhelmina J. Rolark predicted that administration of the program by the District government would result in lower costs through more efficient administration and more careful considera-

tion of claims. Report of the Committee on Housing and Economic Development, January 29, 1980 (Hardy Report) at 2, Report of the Committee on Public Services and Consumer Affairs, January 16, 1980 (Rolark Report) at 2. These reports also recommended review of compensation benefits payable to workers in various occupational categories. *See, e.g., id.* at 3. The Council enacted D.C.Law 3–77 (later codified at D.C.Code §§ 36–301 to –345 (1981 & 1985 Supp.)), which established the District's own workers' compensation program.

Our review of the legislative history shows that the Council was not concerned with prior judicial interpretations of the term "accidental injury" in the federal act, but rather was concerned with such issues as vocational rehabilitation, the carrier's exposure to law suits, benefits and benefit adjustment, and the provision of medical services. *E.g.,* Hardy Report at 8–19. Significantly, the committees did not comment on, or express any dissatisfaction with, judicial interpretation of the phrase "accidental injury." In enacting D.C.Law 3–77, the Council made no change to the language of the previously applicable act regarding "accidental injury." This course of action leads us to conclude that the Council was satisfied with the interpretation the courts had placed on those words. *See Lorillard v. Pons,* 434 U.S. 575, 580–81, 98 S.Ct. 866, 869–70, 55 L.Ed.2d 40 (1978) (when legislature reenacts statutory provision it is deemed to adopt prior judicial interpretations), *see also* 2A Sutherland Stat. Const. § 49.09 (4th ed. 1984) (when legislature reenacts earlier statute, presumption is that legislature approves prior judicial constructions of that statute). We therefore reject the interpretation urged by WMATA since it is at odds with prior judicial interpretations of the term "accidental injury." [4]

Further reason for rejecting WMATA's interpretation and approving the construc-

---

**4.** We observe also that the Department's interpretation comports with the purpose of the District of Columbia Workers' Compensation Act, that is, to hold the employer responsible for all

occupational injuries, regardless of fault, in exchange for the employee's voluntary waiver of the right to sue for a tort recovery possibly greater than the compensation benefits. Hardy

**1130** 

tion adopted by DOES arises from the familiar requirement that we defer to an agency's interpretation of a statute it administers unless that interpretation is unreasonable in light of the prevailing law. *Gomillion v. District of Columbia Department of Employment Services*, 447 A.2d 449, 451 (D.C.1982); *see also McMullen v. Police & Firefighters Retirement and Relief Board*, 465 A.2d 364, 366 (D.C. 1983) (great weight given to reasonable agency construction of statute it administers). DOES has consistently given the term "accidental injury" the same interpretation it applied in these cases. *See, e.g., Brooks v. Designcraft*, H & AS No. 83–161 (Feb. 7, 1984); *Thomas v. Washington Metropolitan Area Transit Authority*, H & AS No. 83–147 (Jan. 19, 1984). As DOES' interpretation is not unreasonable in light of the prevailing law, we defer to it. *Gomillion*, 447 A.2d at 451; *McMullen*, 465 A.2d at 366.[5]

For the foregoing reasons we leave undisturbed the Department's conclusion that the statutory language "accidental injury" does not require that an unusual incident be the cause of the injury, but is satisfied if something unexpectedly goes wrong within the human frame.

*Affirmed.*

Report at 6, Rolark Report at 6. Adopting WMATA's suggested interpretation of "accidental injury," *i.e.*, that the injury must have resulted from an unusual occurrence, would disturb the *quid pro quo* which is basic to such workers' compensation statutes. *Id.*

5. We are aware that there is one class of claimants upon whom the Department has imposed a special burden in order to establish the relationship of the injury to the employment. With respect to claimants who assert that a heart attack arose out of, and in the course of employment, where there is proof of a pre-existing arteriosclerotic condition, DOES requires that the employee establish that the heart attack was precipitated by exertion which was unusual for the injured employee. *Rose v. George Hyman*

*Construction Co.*, H & AS No. 83–226 (Aug. 27, 1984). We have not yet determined whether that standard is correct, *George Hyman Construction Co. v. D.C. Dept. of Employment Services*, 497 A.2d 103, 106 n. 2 (D.C.1985). We are aware that other courts have required the employee to show that unusual or extraordinary job conditions caused certain types of injuries, *Schemmel v. T.B. Gatch & Sons*, 164 Md. 671, 166 A. 39, 43 (1933) (discussing showing required of stroke victim); *School District #1 v. Department of Industry, Labor and Human Relations*, 62 Wis.2d 370, 215 N.W.2d 373, 377 (1974) (discussing showing required of claimant whose mental injury was not caused by trauma). We intimate no opinion as to the correctness of such requirements.