Maria FERREIRA, Petitioner,

v.

DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT SER-
VICES, Respondent,

and

B & B Caterers and Firemans Fund
Insurance Company, Intervenors.

No. 94–AA–26.

District of Columbia Court of Appeals.

Argued April 20, 1995.

Decided Oct. 5, 1995.

Edward L. Norwind, Washington, DC, for petitioner.

Erias A. Hyman, Acting Corporation Counsel at the time the statement in lieu of brief was filed, and Charles L. Reischel, Deputy Corporation Counsel, and Donna M. Murasky, Assistant Corporation Counsel, were on the statement in lieu of brief for respondent.

William P. Dale with whom Charles F. Fuller, Bowie, MD, was on the brief, for intervenors.

Before WAGNER, Chief Judge, and KING, Associate Judge, and GALLAGHER, Senior Judge.

GALLAGHER, Senior Judge:

Petitioner, Maria Ferreira, a waitress and assistant equipment manager at B & B Caterers, filed a workers' compensation claim under the District of Columbia Workers' Compensation Act, D.C.Code §§ 36–301 *et seq.* (1993 Repl.), claiming that she sustained a disabling injury in the course of her employment with B & B Caterers. The Department of Employment Services ("DOES") denied her claim for workers' compensation and found that the worsening of her degenerative cervical and lumbar disk disease was due to the natural progression of a degenerative disease rather than from the aggravation of a preexisting condition in the course of employment. Because DOES' decision is supported by substantial evidence, we affirm.

## I.

Petitioner worked as a waitress for B & B Caterers ("B & B") from 1980 to early 1983. Her job initially consisted of waiting on tables and lifting heavy dishes, boxes, and glass punch bowls. B & B promoted her in 1982 to assistant equipment manager. This job enabled her to direct other workers to lift the heavy objects. Petitioner asserted, however, that she still lifted heavy objects frequently. According to petitioner, she began experiencing discomfort in her neck and the right side of her shoulder and arm in the fall of 1982; and her condition deteriorated and she subsequently terminated her employment at B & B. In 1983, petitioner had surgery to remove a ruptured disk in her spine. She then obtained a job as a security guard for Pinkerton Detective Services. She stated she continued to have spinal difficulties, which required further surgery and, in June 1984, her doctors advised her not to return to work.

In 1983, petitioner filed a workers' compensation claim against B & B for total temporary disability benefits from February 21, 1983 through May 1, 1984, and permanent disability benefits beginning May 1, 1984. She asserted that the heavy lifting associated with her position at B & B caused her spinal disability. DOES denied her claim for benefits finding from the evidence which the hearing examiner credited, that petitioner did not suffer traumatic injury on October 28, 1982, and that this was the sole basis of her claim.

In her findings of fact, the hearing examiner declined to credit petitioner's testimony that she injured her neck while lifting a silver chafing dish weighing approximately 75 pounds. The hearing examiner stated that petitioner's statements "regarding previous symptoms, the incident, whom she advised of the incident and how she felt afterwards," were inconsistent. Furthermore, the hearing examiner credited the testimony of four witnesses who stated that petitioner had not related to them that she had suffered a specific work injury. It was further found that there was no credible evidence to support her claim that she had suffered a specific traumatic injury.

This court reversed the DOES finding because the agency failed to provide petitioner with the statutory presumption of compensability, erroneously required petitioner to point to a "specific traumatic injury" as the cause of her disability, and failed to consider alternative work-related causes of petitioner's disability. *Ferreira v. District of Columbia Dep't of Employment Serv.,* 531 A.2d 651, 655–57 (D.C.1987) (*Ferreira I* ). This court directed DOES to conduct further proceedings on the question of "whether the employer can establish by substantial evi-

dence the non-employment basis of petitioner's disability" keeping in mind that " 'an aggravation of a preexisting condition may constitute a compensable accidental injury under the [Workers' Compensation] Act' . . . [even] if petitioner's disability 'arose *even in part* out of and in the course of [her] employment.' " *Id.* at 660.

On October 19, 1988, a hearing examiner for DOES issued a Compensation Order on Remand which found that petitioner was diagnosed with degenerative cervical and lumbar disk disease in 1976. From the time of the diagnosis to the hearing, she had consistently complained of neck, shoulder and arm pain with stiffness, and her condition had gradually worsened. The hearing examiner found that petitioner failed to proffer any credible evidence that her disability was work-related, other than the October 28, 1982 incident.[1] The hearing examiner concluded that petitioner's disability was "the result of a natural progression of her degenerative cervical and lumbar disease." In rejecting petitioner's argument that the 1982 lifting incident caused her asymptomatic condition to become symptomatic, and thus aggravated a preexisting condition, the hearing examiner found that the weight of the evidence, which consisted of continuous medical visits to correct her condition since 1976, demonstrated that her condition had been deteriorating since the original diagnosis in 1976. Thus, the hearing examiner concluded that an alleged employment injury did not contribute to her degenerative cervical disability. *See Ferreira I, supra,* 531 A.2d at 660 (noting that if petitioner's condition " 'arose even in part out of the course of [her] employment' compensation is appropriate").

Petitioner appealed the compensation order to the Office of the Director of DOES. On December 20, 1993, the Director affirmed the hearing examiner's denial of compensation and agreed that "[d]espite [petitioner's] insistence that she remained asymptomatic until October 1982, record evidence reflects a natural progression of a deteriorating disease. Furthermore, any residual discomfort

is also attributed to the natural progression of the disease."

## II.

When reviewing an agency decision on appeal, this court inquires:

(1) whether the agency has made a finding of fact on each material contested issue of fact; (2) whether substantial evidence of record supports each finding; and (3) whether conclusions legally sufficient to support the decision flow rationally from the findings.

*Cruz v. District of Columbia Dep't of Employment Serv.,* 633 A.2d 66, 70 (D.C.1993) (citations omitted). Substantial evidence is defined as " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *James v. District of Columbia Dep't of Employment Serv.,* 632 A.2d 395, 397 (D.C.1993) (citations omitted). We will affirm the agency's findings of fact and conclusions of law as long as they are supported by "substantial evidence" notwithstanding that there may be contrary evidence in the record (as there usually is). D.C.Code § 1–1509(e) (1992 Repl.); *see Cruz, supra,* 633 A.2d at 70. Moreover, an agency need not explain why it credited one witness over another. *Spartin v. District of Columbia Dep't of Employment Serv.,* 584 A.2d 564, 571 (D.C.1990).

Under the Workers' Compensation Act, once a claimant demonstrates a work-related event and a subsequent disability, there is a presumption that the claim comes within the provisions of the Act. D.C.Code § 36–321(1) (1993 Repl.). "To rebut the presumption the employer must show by substantial evidence that the disability did not arise out of and in the course of the employment." *Baker v. District of Columbia Dep't of Employment Serv.,* 611 A.2d 548, 550 (D.C.1992) (citing *Ferreira I, supra,* 531 A.2d at 655). This court has also held that "an aggravation of a preexisting condition may constitute a compensable accidental injury under the [Workers' Compensation] Act."

---

1. The hearing examiner incorporated by reference the earlier findings of fact in the Compensation Order of October 25, 1985.

*Ferreira I, supra,* 531 A.2d at 660 (citation omitted). "The fact that other, nonemployment related factors may also have contributed to, or additionally aggravated [petitioner's] malady, does not affect [the] right to compensation under the aggravation rule." *Id.* (internal quotations omitted) (quoting *Hensley v. Washington Metro. Area Transit Auth.,* 210 U.S.App.D.C. 151, 155, 655 F.2d 264, 268 (1981)).

■ In the present case, the record supports the hearing examiner's conclusion that petitioner's condition was the result of the natural progression of a degenerative spine disorder rather than from the aggravation of a preexisting condition in the course of employment. The hearing examiner found that petitioner was first treated for lower back pain in 1976, and diagnosed with "cervical radiculopathy, C6 secondary to discogenic disease and spondylosis." The hearing examiner further found that "since March 1976, the claimant has continuously complained of neck and shoulder pain with stiffness . . . [and] the condition of the claimant's cervical and lumbar discs has continuously worsened." [2] The record contains numerous letters from 1976–1978 and 1981 regarding petitioner's visits to her doctors, which support the hearing examiner's findings.[3]

Next, the hearing examiner found that the deterioration of petitioner's condition led to the cervical laminectomy in March 1983 and cervical diskectomy and anterior fusion in June 1984. This is supported by the report of Doctor Henry L. Feffer [4] who stated that "[o]nce the first operation was performed [in 1976], the subsequent sequence of events was inevitable. . . ."

Finally, the hearing examiner concluded that petitioner's disability resulted from a gradual degenerative process and refused to accept petitioner's claim that her employment at B & B, specifically the lifting incident on October 28, 1982, caused her asymptomatic cervical disability to become symptomatic. The Compensation Order on Remand stated:

I am mindful of the court's instruction concerning the aggravation rule. The [petitioner], at the initial hearing, asserted that the alleged lifting incident aggravated her pre-existing condition causing it to be symptomatic. The weight of the evidence, however, mandated rejection of that argument. The [petitioner] began complaining of neck and shoulder pain with stiffness in March 1976. She continued to so complain, in addition to complaining of numbness, and her complaints were recorded as late as March 1981. Contrary to her assertions otherwise, the shoulder pain and numbness which [petitioner] reported . . . in December 1982 . . . were not new to the [petitioner] but were part of an ongoing symptomatology. Further, the evidence indicated that the degenerative process affecting [petitioner's] discs would have caused her complaints regardless of any alleged work event.

This rejection of petitioner's claim of aggravation of a preexisting condition is again supported by Dr. Feffer. He testified at the hearing and also stated in a report included in the record, that it was his opinion that petitioner's condition was a gradual degenerative process. Dr. Feffer examined the petitioner and was provided with her full medical history from 1976–1978 and 1982–present. He concluded that

Th[e] [petitioner] exhibits a classical history of failed neck surgery, with the first

**2.** Doctor George J. Schonholtz noted in early 1978 that the petitioner "continue[d] to have pain in the neck and low back." On June 2, 1978, Dr. Schonholtz stated that "[t]he patient is considered at this time to have a twenty per cent permanent partial disability of the body as a whole with relation to her cervical syndrome, and surgery which was required for this. An additional twenty per cent permanent partial disability of the body as a whole is present with relation to the lumbosacral spine syndrome. . . ."

**3.** Petitioner argues that her condition was asymptomatic until 1982 and that there is no

evidence in the record supporting the hearing examiner's or Dr. Feffer's conclusion that petitioner's neck and spine continued to bother her between 1978–82. The hearing examiner rejected this claim noting that "as late as March 1981, the [petitioner] was reporting pain and stiffness, this time to Dr. Norman Luban." The record contains a letter written by Dr. Luban in 1981 which stated that "[petitioner] has severe, consistent low back pain with radiation to both legs."

**4.** Dr. Feffer testified on behalf of the insurance carrier.

operative intervention being on the cervical spine in spite of the fact that her primary complaints were in her low back at the time. Ever since, she has had persistent symptomatology in her neck and left upper extremity and it does not seem[ ] to have been significantly improved by two additional operative procedures. Although the etiology was further obscured by three aggravating automobile accidents in 1983 and 1984, as well as a claim of possible work related aggravation during an extended period of lifting while she was employed as an equipment manager for B & B Caterers, I cannot in the absence of any specific documented trauma, assume that there was any unusual deterioration of her degenerative process during the particular six month period in question.

The hearing examiner's conclusion that "the [petitioner's] current complaints of neck and shoulder pain with stiffness are the result of her degenerative cervical and lumbar disc disease, and not causally related to her employment," is supported by substantial evidence in the record.[5] Accordingly, the order on review is

*Affirmed.*

---

**5.** Petitioner cites to *Spartin, supra,* 584 A.2d at 570–71, and argues that "where a party has questioned the 'fundamental factual bases for an expert opinion,' the agency is required to 'reach sufficiently detailed findings on basic factual issues to demonstrate that it has considered and ruled upon each of the party's contentions.'" Petitioner, however, never questioned the factual bases for Doctor Feffer's opinion, but primarily argued that it cannot be reconciled with petition-er's experts. Under these circumstances, DOES is not obligated to explain why it credited one expert over the others. *See id.* at 571 (requiring DOES to explain why it credited one expert when that expert relied on "an incorrect, critical factual assumption that petitioner had suffered a heart attack"). Here there was no factually incorrect assumption made by the expert, Dr. Feffer.