Robert McMULLEN, Petitioner,

v.

POLICE AND FIREFIGHTER'S
RETIREMENT AND RELIEF
BOARD, Respondent.

No. 82–855.

District of Columbia Court of Appeals.

Argued Feb. 3, 1983.

Decided May 27, 1983 [1].

Joseph A. Blaszkow, Washington, D.C., for petitioner.

Diana M. Savit, Asst. Corp. Counsel, Washington, D.C., with whom Judith W. Rogers, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for respondent.

Before MACK and PRYOR, Associate Judges, and KELLY,[2] Associate Judge, Retired.

1. The original disposition of this case was by an unpublished Memorandum Opinion and Judgment. Respondent's motion for publication was granted by the court.

2. Judge Kelly was an Associate Judge of the court at the time of argument. Her status changed to Associate Judge, Retired, on March 31, 1983.

PER CURIAM:

Finding that petitioner had been restored to earning capacity within the meaning of D.C.Code § 4–620(a) (1981), the District of Columbia Police and Firefighter's Retirement and Relief Board (hereinafter the Board) terminated his disability annuity. The Board's decision is appealed on the ground that it was not supported by substantial evidence. We affirm.

Petitioner Robert McMullen was an officer of the District of Columbia Metropolitan Police Department (hereinafter MPD) from June 1969 until he retired on disability in June 1975. In February 1982, the MPD Internal Affairs Division notified the Board that petitioner had been restored to "earning capacity" within the meaning of D.C. Code § 4–620(a) (1981), and that therefore it was necessary to terminate his retirement benefits.

At a hearing before the Board, Sergeant Arnold Redmond of the MPD Casualty Investigative Branch testified that petitioner had earned $16,618.64 in 1980 as an armed courier for Purolator Armored, Inc. Petitioner testified that although he had earned $16,618.64 in 1980, this sum did not fairly represent his earning capacity. The record shows that petitioner voluntarily returned $997.13 of 1980 overtime pay to his employer in 1982 after the Board notified him that he had exceeded the 80% earning limitation. Petitioner testified that his reasons for returning that sum were that he realized he had earned more income than he was permitted to earn at the same time he received disability annuity payments; and that this amount represented overtime pay he had received during the first six months of 1980 while training to become a supervisor.[3]

Following the hearing, the Board found: (1) the 1980 salary for the MPD position petitioner had occupied immediately prior to retirement was $19,789; (2) the § 4–620(a)(2) earning limitation for pensioners—80% of the current rate of compensa-

tion of the position occupied immediately prior to retirement—amounted to $15,-831.20 in petitioner's case; (3) petitioner's earned income in 1980 was $16,618.64; and (4) petitioner's 1980 earnings ($16,618.64) exceeded the statutory income limitation ($15,831.20) by $787.44. The Board accordingly concluded that petitioner had been restored to "earning capacity" within the meaning of D.C.Code § 4–620(a) and ordered the termination of his retirement benefits, effective forty-five days later.

The determination of whether an annuitant has been restored to "earning capacity" is governed by the standards established in D.C.Code § 4–620(a) (1981). Section 620(a) provides in pertinent part:

(1) If any annuitant retired under § 4–615 or 4–616, before reaching the age of 50, recovers from his disability or is restored to an earning capacity fairly comparable to the current rate of compensation of the position occupied at the time of retirement, payment of the annuity shall cease:

\* \* \* \* \* \*

(2) Earning capacity shall be deemed restored if, . . . in any calendar year in the case of an annuitant who was an officer or member of the Metropolitan Police force or the Fire Department of the District of Columbia, the income of the annuitant from wages or self-employment or both shall be equal to at least 80 per centum of the current rate of compensation of the position occupied immediately prior to retirement. Nothing in this section shall preclude such member from having an annuity reestablished if his disability recurs, or when his earning capacity is less than 80 per centum of the rate of compensation of the position occupied immediately prior to retirement for any full year thereafter: Provided, that whenever any member is reinstated with his respective department it shall be at

3. There is no evidence in the record that the stated amount of petitioner's income ($16,-618.64) includes disability retirement income.

the same grade or rank held by the member at the time of his retirement.

Petitioner argues that § 4–620(a) creates two standards for determining whether an annuitant has been restored to earning capacity and that the Board failed to analyze his case under both standards. More specifically, he contends that the subsection (2) language establishing the 80% limitation on earned income merely serves as a guide for determining whether an annuitant may be deemed restored to an earning capacity; and that when an annuitant's earnings exceed the 80% mark, the Board may consider other evidence of whether his income is "fairly comparable to the current rate of compensation of the position occupied at the time of retirement" pursuant to subsection (1).

The Board's interpretation of § 4–620(a) is that there is one standard for determining restoration to earning capacity for a disability annuitant who was previously an officer of the MPD and who is younger than 50: when earned income reaches or exceeds the 80% limitation of subsection (2), the former officer's disability annuity must be terminated.

■ A reviewing court must affirm an agency's findings of fact and conclusions of law if they are supported by reliable, probative and substantial evidence in the record. *Kegley v. District of Columbia,* 440 A.2d 1013, 1018 (D.C.1982). Moreover, "courts should give great weight to any reasonable construction of a regulatory statute adopted by the agency charged with the enforcement of that statute." *Watergate Improvement Associates v. Public Service Commission,* 326 A.2d 778, 785 (D.C.1974) (quoting *Investment Co. Institute v. Camp,* 401 U.S. 617, 626–27, 91 S.Ct. 1091, 1097, 28 L.Ed.2d 367 (1971)).

■ We have said that "[i]f the statutory language is clear, it is ordinarily conclusive," *Mulky v. United States,* 451 A.2d 855, 856 (D.C.1982) (citation omitted) (quoting *United States v. Clark,* 454 U.S. 555, 560, 102 S.Ct. 805, 809, 70 L.Ed.2d 768 (1982)), and that "in the absence of persuasive evidence to the contrary, we are not empowered to look beyond the plain meaning of a statute's language in construing legislative intent." *United States v. Stokes,* 365 A.2d 615, 618 (D.C.1976). The language of § 4–620(a) clearly supports the Board's interpretation. It is evident that subsection (2) defines the subsection (1) phrase "restored to an earning capacity fairly comparable to the current rate of compensation of the position occupied at the time of retirement." Indeed, subsection (2) establishes the standard for determining restoration to earning capacity for different types of annuitants.[4] Moreover, there is no persuasive evidence here that the legislative intent was to create separate standards in subsections (1) and (2).

■ On the issue of whether the Board's decision to terminate petitioner's disability annuity was supported by substantial evidence, the record shows that petitioner's wages in 1980 amounted to $16,618.64. The fact that in 1982 petitioner decided to return $997.13 of his 1980 overtime pay to his employer does not reduce the amount that he actually earned in 1980. *See* 26 U.S.C.

4. D.C.Code § 4–620(a)(2) (1981) provides:

Earning capacity shall be deemed restored if, in each of 2 succeeding calendar years in the case of an annuitant who was an officer or member of the United States Park Police force, Executive Protection Service, or the United States Secret Service Division, or in any calendar year in the case of an annuitant who was an officer or member of the Metropolitan Police force or the Fire Department of the District of Columbia, the income of the annuitant from wages or self-employment or both shall be equal to at least 80 per centum of the current rate of compensation of the position occupied immediately prior to retirement. Nothing in this section shall preclude such member from having an annuity reestablished if his disability recurs, or when his earning capacity is less than 80 per centum of the rate of compensation of the position occupied immediately prior to retirement for any full year thereafter: Provided, that whenever any member is reinstated with his respective department it shall be at the same grade or rank held by the member at the time of his retirement.

§ 61(a)(1) (1976). After applying the § 4–620(a)(2) formula, the Board determined that petitioner could have earned as much as $15,831.20 in 1980 (80% of $19,789, the 1980 rate of compensation of the position he held prior to his retirement) at the same time he received disability annuity payments. As the Board found that petitioner had earned $16,618.64 in 1980, it concluded that his earnings had exceeded the permissible amount by $787.44. Given the record in this case, we conclude that the Board's decision to terminate petitioner's disability annuity payments pursuant to § 4–620(a) was supported by substantial evidence.

*Affirmed.*