Eugene M. ZOGLIO, Petitioner,

v.

DISTRICT OF COLUMBIA POLICE AND FIREFIGHTERS RETIREMENT AND RELIEF BOARD, Respondent.

No. 92–AA–359.

District of Columbia Court of Appeals.

Argued May 18, 1993.

Decided June 17, 1993.

David P. Sutton, Washington, DC, for petitioner.

James C. McKay, Jr., Asst. Corp. Counsel, with whom John Payton, Corp. Counsel, Washington, DC, was on the brief, for respondent.

Before SCHWELB, FARRELL and KING, Associate Judges.

FARRELL, Associate Judge:

Petitioner, a former member of the Metropolitan Police Department (MPD), petitions for review of a decision of the Police and Firefighters' Retirement Board (the Board) denying his request to reinstate his disability annuity, which was terminated when his earnings from employment rose above the statutory limitation. D.C.Code § 4–620(a)(1) (1988). The Board denied the request because petitioner had failed to show that his earning capacity again fell below the statutory earnings limitation.

§ 4–620(a)(2). Petitioner contends (1) that the Board misconstrued the Police and Firefighters' Retirement and Disability Act (the Act), D.C. Code §§ 4–601 to 4–634,[1] and (2) that, if construed in this fashion, the statute violates principles of equal protection as applied to retirees in petitioner's class. We reject both arguments and affirm.

### I.

After serving as a member of the MPD from March 5, 1958, to October 1, 1970, petitioner retired on disability at the age of 33 [2] as a result of a psychiatric disorder aggravated by the performance of his duties as a police officer. Petitioner began receiving a disability annuity as provided by the Act. D.C.Code § 4–616. Effective May 27, 1984, however, the Board terminated his annuity pursuant to D.C.Code § 4–620(a), finding that his earning capacity had been restored in 1981, before his fiftieth birthday.[3] D.C.Code § 4–620(a)(1) provides in relevant part:

If any annuitant retired under § 4–615 or 4–616 [both providing for a disability annuity], before reaching the age of 50, recovers from his disability or is restored to an earning capacity fairly comparable to the current rate of compensation of the position occupied at the time of retirement, payment of the annuity shall cease:

\* \* \* \* \* \*

(C) Forty-five days from the date of the determination that he is so restored....

Section 4–620(a)(2) provides:

Earning capacity shall be deemed restored if, ... in any calendar year in the case of an annuitant who was an officer or member of the Metropolitan Police force or the Fire Department of the District of Columbia, the income of the annuitant from wages or self-employment or both shall be equal to at least 80 per centum of the current rate of compensation of the position occupied immediately prior to retirement. Nothing in this section shall preclude such member from having an annuity reestablished if his disability recurs, or when his earning capacity is less than 80 per centum of the rate of compensation of the position occupied immediately prior to retirement for any full year thereafter.

On December 27, 1991, petitioner applied for reestablishment of his annuity. Although conceding that his income had not fallen below 80 percent of the current rate of compensation for his former position, as required by § 4–620(a)(2), he contended that the earning restrictions no longer applied to him because he had reached the age of 50. Petitioner maintained, in other words, that a disability retiree is entitled to have his annuity reinstated automatically when he reaches age 50, regardless of whether his earning capacity has been restored in the meantime. The Board rejected this reading of the statute and denied petitioner's request because he had not demonstrated (or even claimed) that his income had fallen below the level set by § 4–620(a)(2).

### II.

■ As the text quoted above makes clear, § 4–620(a)(1) sets forth two conditions upon which payment of a disability annuity "shall cease," both of which operate before the annuitant reaches age 50: recovery from the disability and restoration of earning capacity as defined by the statute. Section 4–620(a)(2) sets forth two corresponding conditions upon which the annuity, once terminated, can be "reestablished": recurrence of the disability and reduction of income below the statutory percentage ceiling. Unable to avail himself of these express conditions, petitioner urges us to find implicit in § 4–620(a), or

---

1. The Act was originally passed in 1916 and has been amended numerous times since then by Congress.

2. Petitioner was born on November 5, 1936.

3. The Board found that petitioner was employed as an attorney and as chairman of the Public and Social Services Department of Prince George's Community College, teaching courses in the Criminal Justice Program.

the Act as a whole, a third and considerably broader condition on which a disability annuity is reinstated: when the retiree reaches age 50. At that point, petitioner contends, the disability annuity "unconditionally vest[s]." As did the Board, we reject this effort to rewrite the statute.

In an earlier case construing § 4–620(a), we cited and applied the principle that "courts should give great weight to any reasonable construction of a regulatory statute adopted by the agency charged with the enforcement of that statute." *McMullen v. Police & Firefighter's Retirement & Relief Bd.*, 465 A.2d 364, 366 (D.C. 1983) (citations omitted). Moreover, in construing any statute, we follow the principle that "[i]f the statutory language is clear, it is ordinarily conclusive, and ... in the absence of persuasive evidence to the contrary, we are not empowered to look beyond the plain meaning of a statute's language in construing legislative intent." *Id.* (citations and internal quotation marks omitted). *See also Reves v. Ernst & Young,* — U.S. —, —, 113 S.Ct. 1163, 1169, 122 L.Ed.2d 525 (1993); *Parreco v. District of Columbia Rental Hous. Comm'n,* 567 A.2d 43, 45 (D.C.1989).

Section 4–620(a) states that if an annuitant recovers from the disability or his earning capacity is restored before age 50, "payment of the annuity shall cease." It does not state that payment "shall be suspended," "shall cease temporarily," or "shall be deferred." It likewise conditions reestablishment of the annuity on two specific events, no others. Given the precision with which § 4–620(a) is drafted, specifying both the conditions on which payment of the annuity ceases and the conditions on which it may be reestablished, its failure to afford any textual support for an entitlement to automatic restoration of the annuity at age 50 is telling. At the very least, the Board's refusal to find that entitlement

latent in the section seems eminently reasonable.

Petitioner claims to find support for his contrary argument in other sections of the Act which generally relieve disability retirees of financial reporting and physical examination requirements after reaching age 50. Thus, on turning 50, the disability annuitant no longer has to submit written statements setting forth income received from wages or self-employment, or to undergo periodic medical examinations regarding the disability. §§ 4–620(c)(5); 4–627(b)(1).[4] But these provisions cannot bear the weight petitioner assigns them, for they do not address termination of annuity payments (or their reestablishment) in the circumstances to which § 4–620(a) is directed. As will become apparent, there are valid reasons why Congress may have chosen—as the Board concluded it did—to exempt annuitants generally from financial reporting and physical exam requirements after age 50, while treating differently those who have recovered from their disability or whose earning capacity has been restored before that age.

Petitioner reminds us of our obligation "to construe the retirement statute liberally in light of its humane purpose." *Ridge v. Police & Firefighters Retirement & Relief Bd.*, 511 A.2d 418, 426 (D.C.1986). But that duty does not justify engrafting on the statute a provision it does not contain. A law beneficent in some respects may be restrictive in others, coupling generosity with acknowledgment of the hard realities of fiscal management. The 1957 amendments to the District's retirement law illustrate this balance.[5] A key provision of the amendments expanded eligibility for benefits to include police and firefighters who retired because of injury or disease incurred *outside* the performance of duty. The intent of the amendment was to undo "inequities" in the existing Act, under which "a member could serve well and

---

4. Similarly, after a disability annuitant injured in the performance of duty reaches age 50, the percentage of impairment or percentage of disability—statutory yardsticks relevant to the size of the annuity—are no longer subject to redetermination. § 4–616(e)(2)(C).

5. The 1957 amendments comprehensively revised the District's Act. *See* Policemen and Firemen's Retirement and Disability Act Amendments of 1957, Pub.L. No. 85–157, 71 Stat. 391 (1957).

faithfully for many years, and through no fault of his own, incur a disability not in line of duty," yet "have [nothing] to show for his years of faithful service." S.REP. No. 699, 85th Cong., 1st Sess. 2 (1957). At the same time, however, Congress amended § 4–620(a) in the respect critical to this case. Before 1957, a disability annuity would cease only if the annuitant recovered from the disability—whatever outside income he earned. The 1957 amendments expanded the grounds for termination to include restoration of earning capacity. Yet here too Congress responded to an obvious problem of fiscal accountability in measured fashion: only annuitants who had not reached age 55 (later reduced to the present age 50 [6]) were affected, and the annuity could be reestablished in accordance with § 4–620(a)(2).[7] In the context of an Act replete with trade-offs between liberality and fiscal tight-fistedness, the Board's restriction of the terms for reinstatement of an annuity to those set forth in § 4–620(a) is not unreasonable or inhumane.

▮ Petitioner's most spirited argument to the contrary consists of comparing the disparate treatment given various classes of annuitants under the Board's interpretation, all of whom he claims are equally situated. This comparison underlies both petitioner's statutory argument and his assertion that, if the Board's reading is correct, then § 4–620(a) violates his right to equal protection of the laws. In addressing it, therefore, we resolve both contentions.

That the Board engages in "an extremely narrow construction [of § 4–620(a)] which irrationally singles out an isolated class of annuitants" is shown, according to petitioner, by comparing his situation to that of the following classes of annuitants:

(1) Disability annuitants who exceed earning capacity for the first time after age 50;

(2) Disability annuitants who both rise above and later fall below earning capacity before age 50, but again rise above after age 50;

(3) Disability annuitants who rise above and exceed earning capacity shortly before and at age 50, but again fall below after age 50; and

(4) Annuitants who, having resigned with more than five years of service, but less than the length of service required for optional retirement,[8] commence drawing a deferred annuity at age 55 under D.C.Code § 4–623(a).[9]

Petitioner points out that, unlike himself, none of these annuitants earning income demonstrably above the statutory level after the age of 50 is subject to a reduction in pension benefits for the rest of the annuitant's lifetime. Although that is in fact true, it does not convince us that the Board's reading of the statute is either unreasonable or unconstitutionally discriminatory.

The first three classes of annuitants—all disabled retirees whose earning capacity rises above the statutory level before or after age 50—are treated differently from petitioner only because Congress chose *some* age, here 50, after which it determined that the Board should no longer inquire into the current earning capacity of disability annuitants. There are, however, valid reasons why Congress might have fixed an age beyond which restored earn-

---

**6.** *See* Policemen and Firemen's Retirement and Disability Act Amendments of 1970, PUB.L. No. 91–509, 84 Stat. 1136 (1970).

**7.** Moreover, payments would not "cease" at all so long as the annuitant was disabled and did not earn income amounting to 80 per cent of the present compensation for the former position. And, once the annuity is reestablished after age 50, it remains in force because—as explained earlier—after 50 the annuitant is no longer required to report income from wages or self-employment or to undergo medical examinations.

**8.** Optional or ordinary retirees are those members eligible for an annuity upon serving twenty five years and reaching the age of fifty, or merely upon serving twenty years if hired before 1979.

**9.** For the first time in 1979, Congress established a deferred annuity for police officers and firefighters who were "separated from" the force after 5 years of service, but expressly excepted disabled and optional retirees from this annuity. § 4–623(a).

ing capacity would no longer disqualify annuitants for benefits. First, it might have concluded that after age 50 the incidence of annuitants earning income comparable to that of their former employment would decline naturally to the point that administrative monitoring of the finances of an entire class of retirees was not cost-efficient. *See* § 4–616(e)(2)(C); § 4–620(c)(5); § 4–627(b)(1), discussed earlier. Second, Congress could have reasoned that disability annuitants who regain their ability to work or whose earning capacity is restored before age 50 are better able to start a new career—and hence face no near-term dependency on retirement benefits—than those recovering after that age.[10] Finally, Congress could have viewed termination of benefits before 50 as an additional disincentive (beyond the reporting and exam requirements) to unfounded disability claims and conversely as an incentive to service and contribution to the retirement fund until that age and beyond.[11] Inherent in the legislative choice of any such cut-off age for inquiry into reasons for ineligibility is that situations lying closely on one side of the line rather than the other will be treated differently. But that does not render Congress's classification either unreasonable or unfairly discriminatory.

Petitioner's fourth class of annuitants is simply not situated as are disability annuitants. Police officers or firefighters who resign after five years of service (but do not meet the age and service requirements for ordinary retirement) receive an annuity at age 55, not before. § 4–623(a) ("deferred annuities"). In contrast, a retiree disabled in the performance of duty, as petitioner was, receives annuity payments as soon as he is disabled—nothing is "deferred" at all.[12] While the payments may be terminated if the conditions of § 4–620(a)(1) arise, the statute *guarantees* a stream of income for as long as the annuitant's disability and financial dependency

on the retirement scheme continues (as well as when it resumes). That guarantee both explains and justifies the refusal to provide disability retirees with an annuity that "vests" at age 50 regardless of prior termination under § 4–620(a).

We hold, therefore, that the Board reasonably construed § 4–620(a) in concluding that petitioner's annuity would not be reinstated because he had not shown the required reduction of earning capacity or recurrence of his disability. Moreover, as so construed, the statute rests upon a constitutionally permissible classification, *i.e.,* one rationally related to a legitimate governmental interest, and so does not violate equal protection. *See Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 314, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520 (1976); *United States Railroad Retirement Bd. v. Fritz,* 449 U.S. 166, 177, 101 S.Ct. 453, 460–61, 66 L.Ed.2d 368 (1980); *Vance v. Bradley,* 440 U.S. 93, 111, 99 S.Ct. 939, 949–50, 59 L.Ed.2d 171 (1979); *Brown v. Bowen,* 905 F.2d 632, 635 (2d Cir.1990), *cert. denied,* 498 U.S. 1093, 111 S.Ct. 979, 112 L.Ed.2d 1064 (1991).

*Affirmed.*

---

10. Indeed, until petitioner reached age 50 he was entitled to reinstatement in the police department in the nearest equivalent grade and salary upon recovery from his disability. § 4–620(b).

11. If and when petitioner is eligible to receive his annuity again, his twelve years of service

will, as before, figure in the amount of the annuity he receives. § 4–616(e)(2)(B)(iv).

12. A retiree disabled not in the performance of duty is treated identically except that he must have served five years on the force. § 4–615(a).