*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 19-PR-1065

IN RE RHUMEL GOODWIN;

BRUCE E. GARDNER, APPELLANT.

Appeal from the Superior Court
of the District of Columbia
(INT-436-16)

(Hon. Alfred S. Irving, Jr., Probate Judge)

(Submitted April 27, 2021                    Decided May 26, 2022)

*Bruce E. Gardner*, pro se.

Before GLICKMAN, MCLEESE, and DEAHL, *Associate Judges*.

DEAHL, *Associate Judge*: Bruce Gardner appeals a probate court order compensating him for guardianship services at a rate below what he petitioned for. The probate court set his hourly rate at $90 per hour—about 25% of the $350 hourly rate he sought—after concluding his ward's assets were depleted so that Gardner's compensation would have to come from the Guardianship Fund. *See* D.C. Code § 21-2060(a) (2012 Repl. & 2021 Supp.) ("Compensation shall be paid" from the Guardianship Fund "if the estate of the ward or person will be depleted by payouts

made under this subsection."). In calculating Gardner's compensation at the $90 rate, the court reasoned that $90 per hour was "the maximum [compensation] allowed" from the Guardianship Fund, as indicated in the Probate Division's Case Management Plan.

Gardner challenges that ruling on appeal, arguing that the $90 hourly rate reflected in the Case Management Plan has no legal effect and the court erred in treating it as a cap. He also argues, among a host of subsidiary claims, that we should levy "[s]tiff monetary sanctions" in excess of $100,000 against the probate court for its delay in resolving his fee petition, and that the probate court erred in failing to self-impose such sanctions itself. Detecting no reversible error, we affirm. Consistent with our recent opinion in *In re Gardner*, we also remand with instructions for the Superior Court to reexamine Gardner's fees for commuting from a "dummy address," which he misrepresented as his office address throughout his fee petition. 268 A.3d 850, 860 (D.C. 2022).

**I.**

The Probate Division of the Superior Court appointed attorney Bruce Gardner to serve as Rhumel Goodwin's guardian and conservator. Goodwin was elderly, blind, and had endured a stroke. She also suffered from dementia, diabetes, and

other impairments. In his capacities as guardian and conservator, Gardner provided a number of services for Goodwin. He hired contractors to clean and renovate Goodwin's home, retained pest services, hired home health aides, and negotiated an insurance settlement on her behalf. But Gardner also charged Goodwin exorbitant rates for menial tasks. As one example, he sought more than $500 from Goodwin for a trip he took to Costco to pick up adult diapers, charging her $300 per hour for 1.8 hours of his time ($540), consisting of 1.6 hours of driving, .1 hours of shopping, and .1 hours for dropping off the diapers. Gardner filed two previous fee petitions in the probate court seeking compensation for his services, neither of which is the subject of this appeal. The court awarded him more than $26,000 in fees based on those first two petitions, all of which Goodwin paid directly. After Goodwin raised concerns about Gardner depleting her assets, Gardner resigned as guardian and conservator, and the court appointed a successor.

Gardner then submitted his third fee petition, the subject of this appeal, shortly after resigning. He requested $13,469 for 49.7 hours of services. For the first 34.6 hours, he asked to be compensated by Goodwin at an hourly rate of $350, for a total of $12,110, which he acknowledged would leave Goodwin with less than $100 of liquid assets. Gardner asked that he be reimbursed for the remaining 15.1 hours out of the Guardianship Fund, at a rate of $90 per hour. The Guardianship Fund consists

of public funds and is used to reimburse guardians and conservators, among others, where direct payment by the ward would deplete the ward's assets. *See In re Orshansky*, 952 A.2d 199, 210 (D.C. 2008) (citing D.C. Code § 21-2060(a)).

The probate court took roughly eight months to rule on that third fee petition. In its ruling, the court first found that Gardner's requested $350 hourly rate was unreasonable, and reduced it to $300. As support for that finding, it noted that Gardner sought to charge $350 for various tasks requiring no specialized skills, including billing Goodwin $2870 for 8.2 hours of driving, amounting to 21% of his total requested fees.[1] That initial fee reduction was ultimately of no moment, however, as the court further found that Goodwin's assets were "depleted" within the meaning of D.C. Code § 21-2060(a), so that Gardner's fees would be paid from the Guardianship Fund. The court thus declined to compute any portion of Gardner's fee at either the requested $350 or the reduced $300 rate, and instead awarded compensation at $90 per hour, "the maximum hourly rate an attorney may receive from the Guardianship Fund" under Administrative Order 14-13, effectuating the Probate Division's Case Management Plan. Based on that rate, and after making a

---

[1] The bulk of Gardner's driving hours were for commuting to or from his "Office located at 12138 Central Ave., Mitchellville, MD," which we recently explained is the address of a UPS store that Gardner uses as a "dummy address" in his fee petitions. *In re Gardner*, 268 A.3d 850, 860-61 (D.C. 2022).

1.1-hour reduction to the hours Gardner billed, the court awarded Gardner $4374 for 48.6 hours of work.

Gardner moved for reconsideration. He asked the court to revise its order reducing his hourly rate, and sought "damages" in the amount of $9095—the difference between his requested fee and the court's award—based on the court's "unconscionable delay" in rendering its decision. He argued that if the court had acted in a timely manner on his petition, then Goodwin's assets would not have been depleted and he would have received his requested rate. The court denied both requests, specifically noting that in finding Goodwin's funds depleted, "the Court considered [her] financial picture contemporaneously" with Gardner's fee petition. Gardner now appeals.

## II.

Gardner's principal challenge is to the probate court's ruling that he be reimbursed at a rate of $90 per hour from the Guardianship Fund. He also challenges the court's refusal to award him "damages," payable by the court itself, for its delay

in deciding his fee petition. We consider these claims in turn, concluding neither has merit.[2]

## A.

We review the probate court's fee awards for abuse of discretion, but will not upset factual determinations underpinning those awards unless they are "plainly wrong or without evidence to support" them. *In re Orshansky*, 952 A.2d at 209, 211. Gardner maintains the court abused its discretion by reducing his hourly rate to $90 because (1) Goodwin's funds were not depleted so there was no cause to draw his compensation from the Guardianship Fund, and (2) in any event, the court was wrong to put a $90-per-hour cap on compensation from the Guardianship Fund.

---

[2] We dispose of two subsidiary claims more summarily in this footnote. First, Gardner claims that the court erred by initially reducing his rate from $350 to $300, based on its finding that many of his services required no "legal expertise or skill or financial acumen." That is a moot point, given our disposition that the $90 hourly rate was appropriate, so we have no occasion to consider which of the two potentially higher rates was appropriate. Second, Gardner suggests the court erroneously relied on D.C. Code § 11-2604 (2012 Repl. & 2021 Supp.), a statute that fixes the rate of fees for counsel appointed to represent indigent criminal defendants at $90, in fixing his rate at $90 per hour. That's wrong. The court never mentioned or relied on that statute.

On the first point, Gardner makes only a cursory argument—citing to no legal authority—that Goodwin's funds were not depleted "because she owned [a] house with a value of $291,000," received some monthly annuities, and "had $12,091.27" in liquidity when he filed his fee petition. This is largely a new argument that Gardner raises for this first time on appeal, and he has therefore failed to preserve it. *Hollins v. Fed. Nat'l Mortg. Ass'n*, 760 A.2d 563, 572 (D.C. 2000). Gardner's fee petition acknowledged that Goodwin's assets would be depleted by his first 34.6 hours of work, for which he sought $12,110 (leaving her with less than $100 in liquidity), despite her house and annuities.[3] That is why he expressly requested that the remainder of his fees come from the Guardianship Fund—contrary to his present argument—noting that Goodwin's assets would be "depleted by the [initial] payout payment."

But even if we overlook the lack of preservation, Gardner's argument is meritless. A ward's assets need not be zeroed out to be depleted; it is enough that the ward would suffer "substantial financial hardship" by paying the fees herself. D.C. Code § 21-2060(a-1)(6). The probate court found that Goodwin suffered such

___

[3] Section 21-2060(a) does not require the ward's estate to be depleted *before* resort to the Guardianship Fund. Rather, § 21-2060(a) states that compensation "shall" be paid from the Guardianship Fund if the estate of the ward "will be depleted by payouts" from the ward's funds.

substantial financial hardship, noting that her express concerns about Gardner's rates "depleting her assets" and "exacerbating her financial situation" were what prompted Gardner's removal as her guardian and conservator. The record supports that finding, and Gardner provides no basis for us to deem it plainly wrong.

That brings us to Gardner's principal claim, that the probate court erroneously imposed a $90-per-hour cap on compensation from the Guardianship Fund.[4] He maintains that the probate court's reliance on Administrative Order 14-13, and the Case Management Plan that it implemented, was misplaced because that order "is not the law." Indeed, he argues that applying a $90-per-hour cap on compensation would contravene the baseline rule that guardians are entitled to "reasonable" compensation for their services. *See In re Brown*, 211 A.3d 165, 167 (D.C. 2019) (citing Super. Ct. Prob. R. 308(a), (b)(1)). Reasonable compensation, his argument goes, must be "based on the prevailing market rate" for guardianship services, which he posits is $350 per hour in this case. *See Tenants of 710 Jefferson St., NW v. District of Columbia Rental Hous. Comm'n*, 123 A.3d 170, 181 (D.C. 2015)

---

[4] We might also deem this argument waived, given that Gardner expressly requested that any Guardianship Fund compensation be calculated at $90 per hour. We nonetheless exercise our discretion to consider this argument.

(considering the "prevailing market rate" to determine whether a fee is reasonable under the District's Rental Housing Act).

Gardner is wrong at each step of his argument. First, the $90-per-hour cap on compensation from the Guardianship Fund is set by the D.C. Courts' Joint Committee on Judicial Administration, which has the authority to fix that rate in its role as the D.C. Courts' "policy-making body."[5] D.C. Code § 11-1701(a) (2012 Repl.). Gardner does not contend otherwise, as he entirely ignores the fact that the $90 rate was set by the Joint Committee. He instead misdirects his fire at Administrative Order 14-13 itself, which implements the Probate Division's Case Management Plan, insisting that neither has the force of law. Whether he is right about that or not is beside the point, because the Case Management Plan simply memorializes the independent $90 cap "fixed by the D.C. Courts' Joint Committee on Judicial Administration."[6]

---

[5] "The Joint Committee on Judicial Administration in the District of Columbia is the policy-making body for the District of Columbia Courts." DISTRICT OF COLUMBIA COURTS, JOINT COMMITTEE, https://www.dccourts.gov/about/joint-committee; https://perma.cc/833Q-CGUX (2017) (last visited May 4, 2022). Its five members are the Chief Judge and one associate judge of the Court of Appeals, and the Chief Judge and two associate judges of the Superior Court. D.C. Code § 11-1701(a).

[6] *See* D.C. Superior Court, Case Management Plan for the Probate Division at 48, *available at* https://www.dccourts.gov/sites/default/files/matters-docs/Probate-

While Gardner betrays no knowledge that the Joint Committee fixed the $90 rate, and so never directly contests its authority to do so, we note that it had such authority. By statute, the Joint Committee is responsible for overseeing and administering the D.C. Courts' accounts. D.C. Code § 11-1701(b). The Guardianship Fund is one such account, so its management falls squarely within the Joint Committee's purview. *See* D.C. Code § 21-2060(b) (establishing a "'Guardianship Fund' . . . to be administered by the court"). As part of the Joint Committee's authority to set "policies and practices" for the accounts it administers, D.C. Code § 11-1701(b)(9), it had the authority to cap the rates at which compensation would be paid from the Guardianship Fund. *Cf. Zoglio v. District of Columbia Police & Firefighters Ret. & Relief Bd.*, 626 A.2d 904, 906-07 (D.C. 1993) ("hard realities of fiscal management" often include "trade-offs between liberality and fiscal tight-fistedness"). It is not for us to second-guess that policy decision, committed to the discretion of the Joint Committee. *See* D.C. Code § 11-1701; Peter R. Kolker, *Organization, Budgeting and Funding of the District of Columbia's Local Courts*, 11 UDC L. REV. 43, 45 (2008).

---

Division-Case-Management-Plan.pdf; https://perma.cc/23CX-PL6N; *see also* Administrative Order 14-13, *available at* https://www.dccourts.gov//sites/default/files/2017-03/14-13-Probate-Division-Case-Management%20Plan-Aug-2014.pdf; https://perma.cc/HRK9-GCQD.

Operating from the mistaken premise that there was no authority to pass a $90-per-hour cap, Gardner insists this limitation contradicts our precedents requiring the award of "reasonable" fees for guardianship services. Not so. Instead, the $90 cap reflects the Joint Committee's judgment about what a reasonable fee is—in light of fiscal realities and limited public funding—and nothing in our precedents precludes it from fixing such caps as a policy matter. Accordingly, the probate court did not abuse its discretion by reducing Gardner's fees to $90 per hour based on the Joint Committee's restriction on funds drawn from the Guardianship Fund.

**B.**

Gardner next argues that the probate court's failure to rule on his fee petition within the thirty days provided by Probate Rule 308(i)(1) warrants "stiff monetary sanctions." *See* Super. Ct. Prob. R. 308(i)(1) ("The Court shall enter an order disposing of any request for payment from the Guardianship fund . . . within 30 days of the filing of such request."). More specifically, he argues that the court's contravention of the thirty-day deadline—which it exceeded by about seven months—should result in his fee petition being paid in full on the theory that the court "acquiesced by its silence" during the thirty-day time period. He also requests

that monetary damages in the amount of $101,150 "be imposed against the probate court and paid from its budget," and presumably paid to him.

We have recently rejected similar arguments in another of Gardner's appeals. *In re Gardner*, 268 A.3d at 858. While that case did not involve compensation from the Guardianship Fund, so that Probate Rule 308(i)(1)'s particular thirty-day deadline was not at issue, its bottom-line applies here: "Mr. Gardner has provided no support for his argument that a court-appointed fiduciary" is entitled to sanctions or the entirety of his fee request where the court fails to rule within the thirty days provided by Rule 308(i)(1). *Id.* Rule 308(i)(1)'s thirty-day deadline specifies no remedy for when a court fails to decide a fee petition within that timeframe, and when a statutory or rule-based deadline "'does not specify a consequence for noncompliance,'" our "courts will not in the ordinary course impose their own coercive sanction.'" *Dolan v. United States*, 560 U.S. 605, 611 (2010) (quoting *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 63 (1993)). Gardner points us to nothing that would authorize or compel us to depart from that baseline rule and impose the novel remedies he now seeks—awarding him a windfall from the public fisc—and we decline to do so.

**C.**

While we affirm the probate court's judgment and reject Gardner's challenges in all respects, we remand for a single purpose. The probate court should reexamine the fees awarded to Gardner based on his time commuting to and from his purported "Office located at 12138 Central Ave., Mitchellville, MD." As we recently observed in another of Gardner's appeals, that is a "dummy address" that belongs not to Gardner, but a UPS store. *In re Gardner*, 268 A.3d at 860-61. Notably, no party requests such a remand or challenges the fees awarded to Gardner for commuting to-and-from his fictitious office address; as is often the case in probate appeals from fee petitions, there is no opposing party at all in this appeal. While "we usually limit our review to the issues raised by an appellant and will not broaden our gaze to examine" defects that are not complained of, that practice "can yield in appropriate circumstances." *In re Gardner*, 268 A.3d 850, 859 n.17. This is one such circumstance, given (1) that our remand concerns only an order that Gardner himself appeals from, *see* D.C. App. R. 3(c)(1)(B), (2) Gardner's apparent misrepresentations led to a payout from the court-administered Guardianship Fund, so that the court has its own interest in seeing that those public funds are conserved and not misspent, and (3) consistency with our recent remand in *In re Gardner* counsels in favor of a corresponding remand here.

While the probate court may determine that no further adjustments are warranted, the fact that a hefty 21% portion of Gardner's requested fees were attributable to his driving time leads us to conclude that it would be prudent for the probate court to reexamine this aspect of his fee petition.

## III.

For the reasons above, we affirm the probate court's order partially granting Gardner's fee petition and denying his motion for reconsideration. We remand for the probate court to reexamine the fees Gardner charged for commuting to and from a dummy address, and to reduce those fees if appropriate.

*So ordered.*