**FAIR CARE FOUNDATION, A.G. Newmyer, III, J. Robert Hunter, Stuart McFarland, Timothy J.H. Delaney, Susan Cullman, and Joseph Melrod, Petitioners/Appellants,**

**v.**

**DISTRICT OF COLUMBIA DEPARTMENT OF INSURANCE AND SECURITIES REGULATION, Respondent,**

**and**

**Group Hospitalization and Medical Services, Inc., et al., Intervenors/Appellees.**

**Nos. 98–AA–94, 98–CV–401.**

District of Columbia Court of Appeals.

Argued June 9, 1998.

Decided Aug. 27, 1998.

John N. Ellison, Philadelphia, PA, with whom Timothy P. Law, Gloucester, NJ, was on the brief, for petitioners/appellants.

David G. Leitch, with whom Catherine E. Stetson, Washington, DC, was on the brief, for intervenors/appellees.

Charles L. Reischel, Deputy Corporation Counsel, Jo Anne Robinson, Principal Deputy Corporation Counsel, and Lutz Alexander Prager, Assistant Deputy Corporation Counsel, filed a brief for respondent.

Before FARRELL and REID, Associate Judges, and GALLAGHER, Senior Judge.

GALLAGHER, Senior Judge:

The petition before us seeks review of a decision and order issued by respondent District of Columbia Department of Insurance and Securities Regulation ("the DISR" or "Agency") approving a proposed business combination agreement between Group Hospitalization and Medical Services, Inc. ("GHMSI") and Blue Cross and Blue Shield of Maryland ("BCBSMD"). We also review a clarifying and interpreting letter, which we treat as a supplemental order, issued under exceptional circumstances by the DISR after entry of the original order.

Before us on appeal is also the dismissal of a Superior Court action which sought relief substantially the same as that forming the basis of the petition for review.

Petitioners[1] contend that (1) the DISR violated statutorily mandated hearing procedures by denying petitioners the right to live cross-examination of witnesses; (2) the DISR incorrectly relied on the District of Columbia Hospital and Medical Services Corporation Regulatory Act to the detriment of petitioners; (3) the decision was arbitrary and capricious and an abuse of discretion because the DISR failed to consider issues related to the charitable nature of GHMSI and executive officer integrity; and (4) the DISR prejudiced petitioners by substantively altering the decision and order in a subsequent letter issued after impermissible *ex parte* contacts with GHMSI and BCBSMD.

In the appeal from the Superior Court judgment, appellants argue that (1) this court's exclusive jurisdiction to review administrative actions does not eliminate the trial court's jurisdiction over common law claims; (2) appellants had standing to pursue claims against GHMSI for the violation of fiduciary duties; (3) appellants have standing to pursue derivative and quasi-derivative claims against GHMSI; (4) the trial court erred in determining that appellants' claim for civil conspiracy should be dismissed for lack of alleged harm; and (5) the trial court erred by considering facts outside the record in ruling on appellees' motion to dismiss.

In relation to the administrative petition for review, we affirm the DISR's decision and order of December 23, 1997. At the same time, however, we vacate the DISR's clarification and interpretation letter of January 16, 1998, which we treat as a supplemental order, concluding that the modifications made in that order were issued without proper notice and opportunity for petitioners to be heard. In relation to the appeal from the Superior Court, we affirm the trial court's dismissal of appellants' complaint.

## I. Facts

The material and undisputed facts are as follows: Group Hospitalization, Inc. ("GHI") was a non-profit, charitable corporation established by federal charter in 1939 pursuant to an Act of Congress in order to provide hospital services to residents of the District of Columbia.[2] In 1984, GHI merged with Medical Services of the District of Columbia to form appellee GHMSI, and Congress

1. "Petitioners" refers to A.G. Newmyer, III and J. Robert Hunter, the named parties in the petition for review.

"Appellants" refers to Mr. Newmyer, Mr. Hunter, Stuart McFarland, Timothy J.H. Delaney, Susan Cullman and Joseph Melrod, the named parties in the Superior Court action being appealed.

Fair Care Foundation, a national non-profit healthcare advocacy organization, was denied standing in both the agency and Superior Court proceedings, and has withdrawn itself as a party in both the petition for review and the appeal. Therefore, references to petitioners and appellants do not include Fair Care Foundation.

2. Act of Aug. 11, 1939, ch. 698, 53 Stat. 1412.

amended the federal charter to permit GHMSI to arrange for the provision of medical services.[3] In 1992, Congress again amended GHMSI's charter to provide that it would be regulated by the District of Columbia Insurance Administration, now the DISR.[4]

GHMSI is the Blue Cross and Blue Shield licensee for the District of Columbia, Northern Virginia and Prince George's and Montgomery Counties in Maryland. BCBSMD is the Blue Cross and Blue Shield licensee for the remainder of the State of Maryland, and is regulated as a non-profit health service plan by the Maryland Insurance Administration.

On March 27, 1997, GHMSI and BCBSMD entered into a Business Combination Agreement. The agreement proposed the creation of an upstream non-profit Maryland holding company, now called CareFirst, that would be the sole voting member of GHMSI and BCBSMD. GHMSI and BCBSMD would continue to operate within their existing service areas and under their respective regulatory oversight. The combination would allow the two companies to collaborate at the business operations level without altering their corporate existences. The agreement proposed an eighteen member board of directors for CareFirst, with two-thirds representation for BCBSMD and one-third representation for GHMSI, roughly proportionate to the relative size of the two entities. The purpose of the agreement was to establish a more efficient and competitive non-profit health service plan. Specifically, the intent was to enhance the financial posture of the two companies, to maintain local control, to take advantage of the resources of the two companies, to gain efficiencies of scale and to enhance the ability of the two companies to offer health services and products to policyholders.

The two companies also drafted an Intercompany Agreement that would govern transfers of assets and services between GHMSI and BCBSMD. The agreement established four categories of transfers of assets: (1) to meet statutory or regulatory capital reserve requirements; (2) to satisfy member claims; (3) to satisfy other legally enforceable obligations, such as judgments, creditor demands and surplus notes; and (4) discretionary transfers. For all four categories of transfers of assets, GHMSI and BCBSMD would not be required to make a transfer to the extent that the transfer would cause reserves to fall below required levels or would cause a violation of any specific legal prohibitions. There were no other conditions placed on the first three categories of transfers, and the transfers could be made without any agency or board approval. The fourth category, discretionary transfers, required increasingly stringent approvals as the size of the asset transfer, or annual aggregate total of transfers, increased.

On February 6, 1997, GHMSI and BCBSMD jointly filed with the DISR a Statement Regarding the Acquisition of Control of or Merger with a Domestic Insurer. The DISR then proceeded to exercise its jurisdiction to approve or disapprove the proposed transaction pursuant to the District of Columbia Holding Company Systems Act of 1993, D.C.Code §§ 35–3701 to –3728 (1997) ("HCA"), and the District of Columbia Administrative Procedure Act, D.C.Code §§ 1–1501 to –1542 (1997).[5] While the DISR proceedings were pending, Congress enacted legislation that amended GHMSI's charter to allow GHMSI to have one class of members.[6] The amended charter permitted GHMSI to have non-profit corporate members, such as CareFirst.

The DISR conducted an extensive fact finding process in order to determine whether to approve the proposed transaction. The Agency held meetings with GHMSI and BCBSMD, obtained voluminous documentation regarding the financial and operational

3. Act of Oct. 17, 1984, Pub.L. No. 98–493, 98 Stat. 2272.

4. District of Columbia Appropriations Act, Pub.L. No. 102–382, 106 Stat. 1435–36 (1992).

5. The transaction also required, and received, approval from the Maryland Insurance Administration and the Virginia Bureau of Insurance.

6. Act of Dec. 16, 1997, Pub.L. No. 105–149, 111 Stat. 2684.

aspects of the transaction, consulted interested parties and outside experts, such as financial consultant Deloitte & Touche, and coordinated efforts with its Maryland and Virginia counterparts and the Office of Corporation Counsel. The Agency also held two sets of two-day hearings at which testimony was presented by GHMSI, their financial consultant, Goldman, Sachs & Co., the Agency's financial consultant, Deloitte & Touche, members of the public and other interested persons, including petitioners. The Agency also participated in the hearings held by the Maryland Insurance Administration, where testimony was adduced from BCBSMD and their financial consultant, Bear, Stearns & Co., and also from the Maryland Insurance Administration's financial consultant, KPMG Peat Marwick, and members of the public.

On December 23, 1997, the DISR issued a decision and order approving the proposed business combination. The decision determined that the proposed transaction would not convert GHMSI to a for-profit corporation, that the transaction would not pose a risk to GHMSI's charitable assets and that sufficient regulatory structures were in place for the Agency to continuously monitor the situation. The Agency declined to address, as not ripe, the question of whether GHMSI is a charitable institution with charitable set-aside obligations. The decision then analyzed the transaction in light of the factors set out in D.C.Code § 35–3703(g)(1), and determined that the transaction should be approved.[7] The order, however, imposed twenty-seven conditions on the merger which were designed, in part, to ensure that GHMSI's assets would be adequately protected.

After the decision and order was issued, GHMSI and BCBSMD approached the DISR with concerns and questions,[8] and on January 16, 1998, the Interim Commissioner of the DISR issued a letter purporting to clarify and interpret the order in some respects. It is conceded by the Agency that the clarifying letter of the Agency was engendered by the discussions between GHMSI, BCBSMD and the DISR, which took place without notice to petitioners and without their participation. On January 22, 1998, petitioners filed this petition for review of the DISR decision and the subsequent amendments by way of the letter of interpretation and clarification.

One day later, appellants filed a separate suit in the Superior Court against GHMSI and sixteen of its officers, employees and trustees. The complaint charged a breach of fiduciary duties in connection with the proposed transaction and in connection with actions taken by appellees, such as the improper payment of taxes. In a derivative and quasi-derivative capacity, the complaint sought monetary damages to compensate GHMSI for the breach of fiduciary duties alleged, and it contained a count of civil conspiracy. Appellants also sought punitive, declaratory and injunctive relief to prevent the consummation of the business combination. Appellees filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. Super. Ct. Civ. R. 12(b)(1) & (6) (1997). On February 17, 1998, the trial court granted appellees' motion to dismiss the complaint. The trial court concluded that it did not have jurisdiction to hear claims that overlapped with the petition for review then pending in this court because this court retains exclusive appellate jurisdiction to re-

7. D.C.Code § 35–3703(g)(1)(A)–(F) provides that DISR must approve a proposed merger unless, following a public hearing, it finds one of six criteria. Four that are relevant to this action are:

(C) The financial condition of any acquiring party is such as might jeopardize the financial stability of the insurer, or prejudice the interest of its policyholders;

(D) The plans or proposals which the acquiring party has to liquidate the insurer, sell its assets, or consolidate or merge it with any person, or to make any other material change in its business or corporate structure or management are unfair and unreasonable to policyholders of the insurer and not in the public interest;

(E) The competence, experience, and integrity of those persons who would control the operation of the insurer are such that it would not be in the interest of policyholders of the insurer and of the public to permit the merger or other acquisition of control; or

(F) The acquisition is likely to be hazardous or prejudicial to the insurance buying public.

8. The exact form and extent of the discussions do not appear in the record of this proceeding.

view agency actions under the District of Columbia Administrative Procedure Act.

The trial court went on, however, to determine that even if it could exercise jurisdiction over the claims, appellants lacked standing to bring their breach of fiduciary duty and derivative claims, including their claims for declaratory and injunctive relief. The trial court reasoned that appellants lacked standing because they were not properly situated to enforce a charitable trust and they had not alleged a sufficient injury-in-fact. Also, the trial court concluded that appellants, being non-members of GHMSI, a non-profit corporation, could not bring derivative actions on behalf of the corporation. Finally, the trial court determined that appellants could not bring a claim for civil conspiracy because they had not alleged any injury to themselves, and that appellants' allegations of improper tax payments by GHMSI were questionable. On March 13, 1998, appellants filed a notice of appeal. This court, *sua sponte*, consolidated the Superior Court appeal with the Agency review petition.

## II. Petition for Review of Agency Decision

We will first cover the issues presented in the petition for review of the Agency decision, as distinguished from review of the trial court action, which we will discuss later.

### A. Right to Cross-Examination

The first issue for consideration in the Agency appeal is whether petitioners were denied statutorily mandated participation rights because they were not permitted to cross-examine witnesses at the Agency hearings. We conclude that because petitioners, at crucial instances in the proceedings, slept on whatever rights of cross-examination they may have had, their claim has no merit.

The DISR published notice of the first set of hearings in early August 1997. Shortly thereafter, petitioners wrote to the DISR requesting the opportunity to present testimony at the Agency hearings and to examine and cross-examine witnesses pursuant to D.C.Code § 35-3703(g)(2), which appears to provide for such participation.[9] Following consultation with the DISR, however, petitioners agreed to await the second set of hearings to participate actively.

On October 10, 1997, the DISR gave notice of the second set of hearings, scheduled for November 4 and 5. On October 22, petitioners submitted a petition to intervene in which they again asserted their right to obtain discovery, present evidence and examine and cross-examine witnesses. A subsequent letter from petitioners to the DISR asked if petitioners should prepare written statements and if there would be time limits on petitioners' presentation. On October 29, 1997, the Agency confirmed with petitioners that petitioners would be allotted twenty minutes of oral testimony, would be allowed to submit written testimony, and could submit written questions to be asked at the hearings by Agency staff. Petitioners did not register any complaint regarding this procedure.

At the end of the first day of the second set of hearings, the Commissioner made the following comments:

> Now at this time, and I am going to tell you, tomorrow is going to be unusual, but when we finish tomorrow, I will allow anyone to say anything they want to say as long as it is directly related to this transaction. But are there any other matters to be taken up at this time related to this subject by anyone? ... Speak now or forever hold our [sic] peace because I will not ask anyone [from GHMSI] to return tomorrow.... Now, are there any other questions that anyone wants to ask of the participants sitting at the table at this moment? No questions? This hearing will be in recess....

Petitioners did not then assert their right to cross-examination and made no comments to

9. D.C.Code § 35-3703(g)(2) states, in pertinent part:

> At the hearing, ... any other person whose interest may be affected shall have the right to present evidence, examine and cross-examine witnesses, and offer oral and written arguments, and shall be entitled to conduct discovery proceedings in the same manner as is presently allowed in the Superior Court of the District of Columbia.

the conditions being laid down by the Agency.

The next day, petitioners submitted written questions to GHMSI and the DISR's financial consultant, Deloitte & Touche, and submitted written statements propounding their view of the proposed transaction. On the same day, both petitioner Newmyer and counsel for petitioners testified at the hearing, and petitioners' questions were asked by the DISR's special counsel. GHMSI stated that it would respond to the questions in writing. Petitioners did not object to this procedure.

Near the end of that day of hearings, the Commissioner again made a general call for additional comments from the participants, "All right. Is there anyone else anywhere in this room that has anything they want to say at this time before I render my final judgment today?"; and again, at the very end of the proceedings, the Commissioner stated, "Now, with that, is there anything else that anybody wants to say at this hearing? Hearing nothing, this hearing is now adjourned." Petitioners sat silent throughout and made no request for cross-examination.

We have long held that we will not review a procedural claim that was not adequately raised at the agency level. "Administrative and judicial efficiency require that all claims be first raised at the agency level to allow appropriate development and administrative response before judicial review." *Hughes v. District of Columbia Dep't of Employment Servs.,* 498 A.2d 567, 570–71 (D.C. 1985) (and cases cited therein); *Abolaji v. District of Columbia Taxicab Comm'n,* 609 A.2d 671, 672 (D.C.1992) (citing *Hughes, supra* ). Failing to object at a time when an error complained of on appeal could be corrected below is sufficient to work a forfeit of that claim on appeal.

> Procedural objections to the action of an administrative agency or trial court must be timely made to give the tribunal an opportunity to correct the error, if error there be; such contentions cannot first be made on appeal. It is imperative to an efficient and fair administration of justice that a litigant may not withhold his objections, await the outcome, and then complain that he was denied his rights if he does not approve the resulting decision.

*Brotherhood of Railroad Trainmen v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co.,* 127 U.S.App. D.C. 58, 61–62, 380 F.2d 605, 608–09 (1967) (citing *United States v. L.A. Tucker Truck Lines, Inc.,* 344 U.S. 33, 37, 73 S.Ct. 67, 97 L.Ed. 54 (1952) ("Simple fairness ... requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the appropriate time under its practice.")).

Although petitioners initially asserted a right to cross-examination of witnesses by requesting that such procedure be followed, they abandoned that asserted right by not objecting when a contrary procedure was announced and by remaining silent when the Commissioner asked if there were any more issues to be considered. Had petitioners responded at the hearing when the opportunity to do so was announced by the Agency, the Commissioner would have had an opportunity to rule upon any procedural right being asserted.[10] Because it is unnecessary to reach the merits of petitioners' procedural claim in this regard, we do not consider the question of what right to live cross-examination petitioners could have asserted under D.C.Code § 35–3703(g)(2).

### B. Merits of the Agency Decision

Petitioners attack the merits of the DISR decision on two main grounds. Specifically, petitioners assert that (1) the DISR committed a clear error of law when it relied on the District of Columbia Hospital and Medical Services Corporation Regulatory Act ("HMSCRA"), D.C.Code §§ 35–4702 to –4724

10. We note that, after the record for this proceeding at the agency had closed, petitioners lodged an objection with DISR regarding the lack of cross-examination. However, this late objection does not affect our analysis because the agency was operating well within its discretion in not reopening the record for consideration of petitioners' late objection. *See American Combustion, Inc. v. Minority Business Opportunity Comm'n,* 441 A.2d 660, 667 (D.C.1982) (decision to reopen record is a matter of agency discretion).

(1997), to determine that the proposed transaction would not convert GHMSI into a for-profit institution, and as a result of that determination, abused its discretion and acted arbitrarily and capriciously in declining to decide whether GHMSI was a charitable institution subject to a charitable set-aside; and (2) the DISR's finding that there was no deficiency in the integrity of GHMSI officers was arbitrary, capricious and without substantial evidence.

In reviewing an agency decision, we operate under a familiar set of deferential rules. We must assess:

(1) whether the agency has made a finding of fact on each material contested issue of fact;

(2) whether substantial evidence of record supports each finding; and

(3) whether conclusions legally sufficient to support the decision flow rationally from the findings.

*Metropolitan Poultry v. District of Columbia Dep't of Employment Servs.*, 706 A.2d 33, 34 (D.C.1998) (citing *Ferreira v. District of Columbia Dep't of Employment Servs.*, 667 A.2d 310, 312 (D.C.1995)). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). We will only set aside an agency ruling if "we conclude that it was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Teal v. District of Columbia Dep't of Employment Servs.*, 580 A.2d 647, 650 (D.C. 1990); *see* D.C.Code § 1–1510(a)(3). This court has the statutory authority to "decide all relevant questions of law." D.C.Code § 1–1510(a)(1).

### 1. GHMSI as a Charitable Institution

Petitioners argue that, because it is undisputed that GHMSI is not regulated by the District of Columbia Hospital and Medical Services Corporation Regulatory Act, the DISR committed a clear error of law by relying on that Act to determine that it was premature to resolve the question of whether GHMSI is a charitable institution. Petitioners contend that the proposed transaction poses a threat to GHMSI's charitable assets and is therefore not in the public interest. We reject this challenge to the decision.

In its decision and order, the Agency undertook a lengthy discussion centered on whether the proposed transaction would convert GHMSI into a for-profit corporation, a conversion that could jeopardize GHMSI's public assets. Although the transaction was not subject to HMSCRA at that point, GHMSI intended to become licensed under the Act as part of the transaction. As such, the DISR analyzed the transaction to determine if it would constitute a "conversion" under HMSCRA. The Agency determined that the transaction would not alter GHMSI's status as a non-profit corporation, and that there would be extensive and sufficient regulatory oversight to protect improper future corporate maneuvers. The Agency then concluded that any discussion of whether GHMSI was a charitable institution subject to a charitable set-aside was therefore premature.

Furthermore, in order to ensure that no future conversion could occur without regulatory oversight, the Agency imposed several relevant conditions including: (1) requiring GHMSI to "conduct its affairs pursuant to the requirements contained in its federal charter;" (2) requiring GHMSI to retain a financial consultant to assist in valuing GHMSI's assets; and (3) requiring CareFirst to amend its articles of incorporation to "expressly set forth an obligation to safeguard the assets of GHMSI" and to preserve GHMSI's non-profit status.

The Commissioner clearly considered petitioners' main contention regarding whether GHMSI's assets required protection after the transaction. In fact, the Agency decision noted that "Because the issue of a 'charitable set-aside' is central to the analysis of the entire Proposed Transaction, we will consider it first." Relying on the "[s]ubstantial testimony" presented on the issue, which included testimony by petitioners and documents submitted by the Office of Corporation Counsel, the DISR concluded that GHMSI would not be converted to a for-profit corpo-

ration and GHMSI's assets were therefore not at risk; accordingly, it ruled that "the issue of whether or not GHMSI is a 'charity' does not need to be determined at this time."

In the light of this record, we cannot conclude that the DISR committed an error of law or an abuse of discretion, nor do we find that the DISR acted arbitrarily or capriciously. The order addressed petitioners' concerns squarely and thoroughly, and the outcome flowed rationally from findings based on substantial evidence.

### 2. Integrity of GHMSI's Officers

Petitioners contend that issues relating to the structuring of executive compensation contracts placed the integrity of GHMSI's officers in question, and that the DISR acted arbitrarily and capriciously and without substantial evidence in affirming the "competence, experience, and integrity of those persons who would control the operation of the insurer." D.C.Code § 35-3703(g)(1)(E); see note 7, *supra*. Petitioners also complain that the DISR issued its order without analyzing the executive compensation contracts firsthand. The contracts about which petitioners complain were those executive compensation contracts that provided for severance pay in case of a "change in control" of GHMSI.

In the order, the Commissioner stated that "No evidence or testimony was introduced that would give the DISR any reason to question" the integrity of GHMSI's officers. While the record contains some evidence that GHMSI's officers may have placed themselves in a position to profit greatly from the transaction, there is also substantial evidence that the officers' integrity is beyond question. Unhelpful to petitioners' contention is petitioner Newmyer's own testimony which, though attacking GHMSI officers' management abilities and GHMSI policies, was complimentary to GHMSI officers' personal integrity:

> We have known several members of both boards [GHMSI and BCBSMD] for years. I have known Larry Glasscock [Chief Executive Officer of GHMSI] through civic activities and gotten to know Bill Jews [Chief Executive Officer of BCBSMD] more recently. While I doubt that this testimony will make us better friends, I don't think for a moment that these guys are bad people. The health care industry is riddled with bad actors.... We don't think that the Blues are riddled with bad actors.

The Commissioner was aware of the severance pay provisions in the executive compensation contracts, and concluded that the provisions did not adversely affect the GHMSI officers' integrity. To some extent, petitioners' own testimony provided evidence for this conclusion. In addition, to avoid future impropriety, the Commissioner imposed important conditions on the funding of those contracts in order to ensure that the integrity of the officers would remain intact, see, *e.g.*, note 14, *infra*, and reserved the right to disapprove of the contracts in the future if they were later found to be inappropriate.

On this record, we conclude that the Commissioner properly addressed the issue of GHMSI officers' integrity and based his decision on substantial evidence.

### C. Ex Parte Contacts

Petitioners next claim that the DISR improperly modified its December 23 decision and order, following *ex parte* communications with representatives of GHMSI and BCBSMD and without notice to petitioners, by issuing the January 16 letter of clarification and interpretation. Because portions of the letter substantively altered the Agency's previous decision and order, we treat it as a separate order which petitioners have properly brought before us for review. We vacate the order because we conclude that it was entered without proper notice and opportunity for participants such as petitioners to be heard.[11] While the Agency is by no

11. Petitioners took part in the DISR proceedings as "person[s] whose interest may be affected" by the proposed merger agreement. D.C.Code § 35-3703(g)(2). Intervenors nonetheless argue that petitioners lack standing to challenge either the original or the revised order of the Agency because they are not "person[s] aggrieved" within the meaning of D.C.Code § 35-3714(a) (incorporating D.C.Code § 1-1510 (1992)). We do not agree. The broad right of participation granted petitioners and others by § 35-3703(g)(2) would be nullified if the DISR, at an important stage,

means precluded from amending its original decision, it may do so only in accordance with fair procedures.[12]

As previously noted, the original Agency order imposed twenty-seven conditions on the consummation of the proposed business combination. Following the issuance of that order, the Agency engaged in *ex parte* discussions with GHMSI representatives that resulted in a five-page letter by the Agency purporting to be "clarifications and/or interpretations relating to the Decision and Order." The letter addressed nine conditions of the order, and also provided a procedure for certain approvals required under the order. All of the proceedings leading up to the letter occurred without affording petitioners notice or participation.

An agency is required to maintain an official record in every contested case,[13] and is prohibited from issuing any decision or order in such a case "except upon consideration of such exclusive record." D.C.Code § 1–1509(c). This record-making requirement has "the fundamental purpose ... to assure the parties an adequate opportunity, at the administrative proceeding, to challenge and respond to the evidence which forms the basis of the agency's decision." *M.B.E. Inc. v. Minority Business Opportunity Comm'n,* 485 A.2d 152, 159 (D.C.1984). It is basic to the notion of fairness in administrative proceedings that "the mind of the decider should not be swayed by evidence which is not communicated to both parties and which they are not given an opportunity to controvert." *Quick v. Department of Motor Vehicles,* 331 A.2d 319, 323 (D.C.1975); *see American Trucking Assn's v. Frisco Transp. Co.,* 358 U.S. 133, 145–46, 79 S.Ct. 170, 3 L.Ed.2d 172 (1958) (agency's power to correct inadvertent ministerial errors "may not be used as a guise for changing previous decisions because the wisdom of those decisions appears doubtful in the light of changing policies"); *United States Lines, Inc. v. Federal Maritime Comm'n,* 189 U.S.App. D.C. 361, 384–85, 584 F.2d 519, 541 (1978) ("It is the obligation of the agency, consistent with its duty to afford a hearing and its responsibility to provide a record for judicial review, to guard against [*ex parte* ] contacts.").

In this case, portions of the Agency's January 16 letter sought to make substantive alterations to the Agency's December 23 decision and order.[14] This letter was precipitated by *ex parte* contacts between the Agency and GHMSI that were not made a part of the record or subject to adversarial attack, and we are therefore unable to conduct an appropriate review of the Agency's action. *See* D.C.Code § 1–1510(a)(3) (this court has power to set aside agency actions

could effectively foreclose that participation by *ex parte* decisionmaking. In other words, the definition of "person aggrieved" under § 35–3714(a) necessarily draws meaning from the broad class of persons allowed to participate in hearings under the HCA and the procedural rights afforded those persons.

12. We express no opinion on the merits of amending the decision and order.

13. There is no dispute that this action is a "contested case" pursuant to the District of Columbia Administrative Procedure Act.

14. A key example is the letter's modification of condition twelve in the original agency decision. That condition read, in pertinent part:

> GHMSI shall alter the executive compensation contracts with **any** GHMSI executive having a right to obtain severance pay pursuant to a "change in control" provision. **All such contracts** shall be amended by the assumption of the obligations of such contracts by [CareFirst] and shall provide that any severance pay will be funded by the parties in the same proportion as the initial capitalization of [CareFirst]. (Emphasis added.)

The letter, however, provided that "The provisions in Paragraph 12 regarding approval of executive compensation contracts apply only to severance contracts which were created or negotiated contemporaneously with the Business Combination proposal. Paragraph 12 does not apply to employment contracts which were negotiated ... in 1995 or earlier, which were wholly unrelated to the Business Combination." When compared to the plain language of the original decision, the letter makes a substantive and material alteration in the funding requirement for executive compensation contracts. We observe that, although the letter refers to "[t]he provisions of [a] draft Assumption Agreement" submitted to DISR after the original decision, which "satisfy the requirement that [CareFirst] assume certain executive compensation obligations," intervenors admitted at oral argument that the draft Agreement is not part of the record before us.

found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law); *United States Lines, supra,* 189 U.S.App. D.C. at 383, 584 F.2d at 541 ("*Ex parte* contacts ... foreclose effective judicial review of the agency's final decision according to the arbitrary and capricious standard of the Administrative Procedure Act."). Treating the January 16 letter as a separate order, therefore, we vacate it. As before, intervenors are free to request substantive revisions of the December 23, 1997 decision and order, but such modifications may be entered by the DISR only after proper notice and opportunity for petitioners to be heard.

### III. Superior Court Action

Lastly, turning to the extraordinary Superior Court proceeding, appellants argue that the trial court erred in dismissing their common law claims against GHMSI on the basis of lack of jurisdiction and standing. They contend that the common law claims invoked grounds distinct from the Agency action to challenge the proposed business combination. We conclude that because the District of Columbia Administrative Procedure Act contemplates exclusive jurisdiction in this court over review of administrative proceedings involving contested cases, the trial court clearly acted properly in declining to entertain appellants' claims.

We have long held that, pursuant to D.C.Code § 1–1510,[15] this court maintains exclusive jurisdiction over challenges to administrative actions. "[Section] 1–1510 provides for exclusive appellate review of administrative action in contested cases, and thereby precludes concurrent jurisdiction in the Superior Court." *District of Columbia v. Douglass,* 452 A.2d 329, 332–33 (D.C. 1982). Any Superior Court action that "constitutes a challenge" to a previous agency action, therefore, would be brought in the wrong court. *Id.* This comports with the notion that "one of the key purposes of the [District of Columbia Administrative Procedure Act] was to reform and systematize the channels of judicial review of administrative actions." *Id.* at n. 7; *see Cheek v. Washington,* 333 F.Supp. 481, 484 (D.D.C.1971) ("The Administrative Procedure Act was an effort not only to expand rights of review of administrative action in the District of Columbia, but also to centralize such review in one place and to eliminate the disorderliness and lack of uniformity of decision inherent in multiple tribunals."); *but see District Properties Assoc. v. District of Columbia,* 240 U.S.App. D.C. 21, 26–27, 743 F.2d 21, 26–27 (1984) (District of Columbia Administrative Procedure Act does not prevent appellants from raising non-coextensive agency grievance claims in federal court).

The Superior Court suit was mainly concerned with enjoining and preventing the consummation of the business combination. This "constitutes a challenge" to the Agency decision, and therefore violates the exclusivity of this court's jurisdiction over administrative appeals. Appellants in fact conceded that there "is some overlap in the relief that can be granted through the regulatory/appeal process and through" the trial court action. As the trial court noted in its memorandum opinion dismissing the action:

> If there is to be meaning to D.C.Code § 1–1510 and *Douglass,* [*supra,*] then this point of "subject matter overlap" ... must mark the boundary between this Court's jurisdiction and that of the Court of Appeals. Issues which are before the Court of Appeals and issues the disposition of which are "inextricably intertwined" to that Court's resolution of the Petition of [sic] Review are not properly before this Court.

Appellants were free to raise at the agency level the issues presented in their common law claims, and thereby to preserve those issues for our direct review. Under the statutory mandate, this court is the proper resort for those "suffering a legal wrong, or adversely affected or aggrieved" by an agency decision. D.C.Code § 1–1510(a). We will not sanction appellants' attempt to "thwart

15. D.C.Code § 1–1510(a) states, in pertinent part:

> Any person suffering a legal wrong, or adversely affected or aggrieved, by an order or decision of the Mayor or an agency in a contested case, is entitled to a judicial review thereof ... upon filing in the District of Columbia Court of Appeals a written petition for review.

the congressional scheme establishing direct review in this court" and create multiple reviews. *Douglass, supra,* 452 A.2d at 332 (citing *Cheek, supra,* 333 F.Supp. at 483). Accordingly, we affirm the sound trial court decision dismissing appellants' claims.

## IV. Conclusion

The decision and order of the District of Columbia Department of Insurance and Securities Regulation dated December 23, 1997 is hereby affirmed. The January 16, 1997 letter issued by the Agency altering that decision, and which we treat as a supplemental order, is hereby vacated. The trial court order dismissing appellants' action in that court is hereby affirmed.

*So ordered.*