**WASHINGTON HOSPITAL CENTER, Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent.**

**Anita G. Jones, Intervenor.**

**No. 03–AA–822.**

District of Columbia Court of Appeals.

Argued Sept. 1, 2004.

Decided Oct. 7, 2004.

William S. Hopkins, for petitioner.

Peter T. Enslein, for intervenor.

Robert J. Spagnoletti, Attorney General for the District of Columbia, and Edward E. Schwab, Acting Deputy Attorney General for the District of Columbia at the time the statement was filed, filed a statement in lieu of brief for respondent.*

Before FARRELL and RUIZ, Associate Judges, and PRYOR, Senior Judge.

PRYOR, Senior Judge:

This appeal arises out of a claim for workers' compensation benefits filed by Anita Jones (claimant) pursuant to the District of Columbia Workers Compensation Act of 1979, as amended, D.C.Code §§ 32–1501, et seq. (2001) (the Compensation Act).[1] The Washington Hospital Center (WHC or Employer) appeals from an adverse final order of the Department of Employment Services (DOES or Director) declaring claimant eligible to receive workers' compensation. WHC contends that claimant did not provide it with timely notice that her illness was workplace related, and is therefore ineligible to receive workers' compensation benefits. We affirm.

I.

Claimant was a custodial employee of WHC from February 1972 through February 1979, and from January 1983 through July 1999. Claimant's duties included cleaning WHC's Physicians' Office Build-

---

* At the time the briefs were filed, Messrs. Spagnoletti and Schwab were called Corporation Counsel and Acting Corporation Counsel, respectively. Since that time, the Mayor of the District of Columbia has issued an executive order redesignating the Office of Corporation Counsel as the Office of the Attorney General for the District of Columbia. *See* Mayoral Order No. 2004–92, 51 D.C. Reg. 6052 (May 26, 2004) (citing D.C.Code § 1–204.22(2) & (11) (2001)). We therefore employ the titles applicable at the time of this opinion's publication.

1. Claimant died prior to this court hearing oral arguments in this case.

ing and Main Building, and although she later reached a supervisory position, she continued to perform intermittent cleaning duties throughout the duration of her employment with WHC. Claimant's cleaning duties in these buildings included sweeping and dusting debris that accumulated as a result of maintenance department employees' work in the area located between the ceiling tiles and the underside of the floor above. Claimant proved, and WHC does not dispute, that the underside of the floors in both the Physicians' Office Building and the Main Building were treated with asbestos fireproofing and that, during the time claimant worked at the hospital, the asbestos material had deteriorated and resulted in elevated levels of airborne asbestos fibers and asbestos dust contamination of the top of the ceiling tiles.

In July 1999, claimant was diagnosed with a hernia and WHC granted her a medical leave of absence from July 21 through September 5 of that year. A tissue sample taken during the operation to repair the hernia resulted in claimant's surgeon, Dr. Joel Stevens, diagnosing her with peritoneal mesothelioma, a type of cancer. Dr. Stevens referred claimant to Dr. John M. McKnight, an oncologist, for treatment.

Dr. McKnight first met with claimant on September 3, 1999. In that initial meeting, he discussed her medical history with her, as well as the nature of her illness. Dr. McKnight informed claimant that there is a known causal relationship between mesothelioma and exposure to asbestos or heightened exposure to tobacco substances. In discussing her work place and home environment, claimant described her duties at the hospital and also that her spouse of many years regularly smoked

two and a half packs of cigarettes daily. In a report written the same day by Dr. McKnight to Dr. Bell, with a copy to Dr. Mark A. Steves, the doctor who would operate on claimant's mesothelioma, Dr. McKnight wrote that claimant "[gave] me a very long and very clear history of chronic lung disease, long-term asbestos exposure from a work basis, and long-term pulmonary symptomatology."

Claimant was scheduled for surgery with Dr. Steves in late September to excise the mesothelioma. On the same day that she conferred with Dr. McKnight, she requested and was granted a medical leave of absence for abdominal surgery through November 10, 1999. Claimant did not answer the leave of absence form's question whether the leave request was a result of a work-related injury or illness.

On September 24, claimant saw a television advertisement aired on behalf of attorney Peter T. Enslein which mentioned mesothelioma. Claimant telephoned Enslein, and the two met on September 26. Claimant subsequently retained Enslein to investigate whether she had been exposed to asbestos at WHC and to file for workers' compensation.[2] On October 19, 1999, claimant's counsel filed an Employee's Notice of Accidental Injury or Occupational Disease and an Employee's Claim Application, which provided WHC with notice of claimant's request for compensation arising specifically from her mesothelioma. On February 14, 2000, in response to a subpoena, WHC produced documentation of reports prepared for it in 1984, 1986, 1987, and 1993 by different companies that identified the existence of asbestos materials in the buildings in question and the

---

2. Attorney Enslein has thus been claimant's attorney throughout her legal proceedings in this matter.

potential health threat they posed to employees.

At a compensation hearing before the ALJ in August 2000, the parties, after presenting the evidence, addressed the question whether claimant had given Employer timely notice of a work-related injury as required by the statute. The ALJ issued an order in favor of the claimant and Employer appealed to the Director. The Director affirmed the hearing order, concluding that claimant was entitled to compensation. On the basis of Employer's appeal to this court, we review the Director's resolution of the question.

## II.

### A.

DOES concluded that claimant's notice of her work-related condition was timely. In reaching its conclusion, DOES found that claimant was not aware of the relationship between mesothelioma and her employment until February 14, 2000 when, through the discovery process, she learned of the presence of asbestos at Washington Hospital Center. DOES concluded that claimant could not have been aware, through the exercise of reasonable diligence, of the relationship until February 14, 2000, because that is the first time both Dr. McKnight and the claimant had confirmation of the existence of asbestos at Washington Hospital Center.

 In reviewing an administrative decision, we defer to factual findings of the agency as long as there is substantial evidence to support them. *Washington Metropolitan Area Transit Authority v. District of Columbia Dep't of Employment Servs.*, 825 A.2d 292, 294 (D.C.2003). "Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. We will affirm the agency's findings of fact … as long as they are supported by substantial evidence notwithstanding that there may be contrary evidence in the record (as there usually is)." *Ferreira v. District of Columbia Dep't of Employment Servs.*, 667 A.2d 310, 312 (D.C.1995) (quotation marks and citations omitted). "Where an agency's decision is largely based upon interpretation of a statute or regulation, we defer if the decision is reasonable in light of the language of the statute (or rule), the legislative history, and judicial precedent." *WMATA, supra,* 825 A.2d at 294. We note that the Compensation Act incorporates a rebuttable presumption that claimant gave her employer notice of her injury in a timely fashion in accordance with the humanitarian purposes of the Act. *See, e.g., Parodi v. District of Columbia Dep't of Employment Servs.*, 560 A.2d 524 (D.C.1989); *Spartin v. District of Columbia Dep't of Employment Servs.*, 584 A.2d 564 (D.C.1990).

### B.

 The notice requirement under the Workers' Compensation Act (D.C.Code § 32–1513(a) (2001)) provides, in pertinent part, that:

Notice of any injury or death in respect of which compensation is payable under this chapter shall be given within 30 days after the date of such injury or death, or 30 days after the employee or beneficiary is aware or in the exercise of reasonable diligence should have been aware of a relationship between the injury or death and the employment. Such notice shall be given to the Mayor and to the employer.

WHC does not seriously contest the standard required by the statute in order to

trigger its notice requirement;[3] we agree with the Director that "[t]he language of the [Compensation] Act is quite clear that the 30–day period in which an employee must give notice begins after the exercise of reasonable diligence that makes the employee aware of the causal relationship between the [illness] and the employment."[4] *See WMATA, supra*, 825 A.2d at 294. However, WHC argues that on or before September 3, 1999, claimant knew or should have known through the exercise of reasonable diligence, that the mesothelioma was related to her work at Washington Hospital Center. As a result, her Employee's Notice of Accidental Injury filed on October 19, 1999, was not filed within thirty days of September 3, 1999, and therefore was not timely filed.

In support of its argument, WHC points to claimant's deposition testimony, Dr. McKnight's deposition testimony, and a report written by Dr. McKnight to Dr. Bell. In claimant's deposition testimony, she testified that in July 1999, after her abdominal surgery, Dr. Steves informed her that asbestos came from being around people who did a lot of smoking and from being around people that were doing maintenance work. She also testified that while she was in the hospital, her brother searched the internet and learned that mesothelioma is caused by asbestos and after she was released from the hospital, she read in an encyclopedia that mesotheli-

oma is caused by piping, railroads, smoke and asbestos. Claimant also testified that Dr. McKnight advised her of the possibility of a connection between her workplace and her disease.

In his deposition testimony, Dr. McKnight testified that he had a discussion with the claimant about the known and documented relationship between asbestos and mesothelioma during her initial visit on September 3, 1999. In his report to Dr. Bell, dated September 3, 1999, Dr. McKnight noted that, during their meeting, the claimant detailed a history of "long-term asbestos exposure from a work basis." WHC argues that this combined evidence shows that claimant was aware, or should have been aware, through the exercise of reasonable diligence, of the relationship between the mesothelioma and her work by September 3, 1999. Thus WHC is steadfast in its view that the administrative decision in favor of claimant is not supported by the requisite evidence.

In reviewing the evidence presented at the administrative hearing, we note the evolving nature of the discovery of claimant's condition and the likely cause of it. A number of the dates of certain events are not disputed. The thrust of Employer's argument is that Dr. McKnight's report of his initial visit with claimant, together with other circumstances possibly connecting her condition to her work, should have reasonably caused her to file a

---

3. WHC argues that claimant need not have knowledge of the relationship between her illness and her workplace to a reasonable degree of medical certainty. Because there is no basis, in the statute or elsewhere, for the application of that standard to the notice requirement in a workers' compensation claim, we do not perceive that question to be a contested issue.

4. WHC relies on *Robinson v. Washington Hosp. Ctr.*, OHA No. 00–398B, OWC No. 554069, 2002 DC Wkr. Comp. Lexis 107 (May

16, 2004) to argue that claimant was aware, or alternatively should have been aware through reasonable diligence, of a possible connection between her mesothelioma and her work. WHC argues that the possibility of a connection is enough to trigger the notice requirement of the Compensation Act. DOES found, and we concur, that the ALJ was incorrect in *Robinson* when he improperly deviated from the plain language of the statute by substituting "possibility" for "reasonable diligence."

timely notice of her claim. We think this contention minimizes other evidence which was presented. Once diagnosed with mesothelioma, claimant discussed the possible causes of her condition with her doctors. It was revealed that, over a long period of time, her husband was a heavy consumer of cigarettes. She did independent research on the disease and its causes. Her brother researched mesothelioma and its causes on the internet. She contacted an attorney to investigate the possible causes of her disease. It was not until she received the reports documenting asbestos at Washington Hospital Center that there was a causal relationship established between her mesothelioma and her work. DOES found that although Dr. McKnight discussed asbestos exposure as a possible cause of the mesothelioma, he did not tell claimant that it caused her mesothelioma because he did not have knowledge of asbestos exposure at Washington Hospital Center.

In a letter written by Dr. McKnight, dated July 10, 2002, to claimant's attorney, he clarifies what was discussed in the initial meeting with the claimant. In his letter, Dr. McKnight wrote that, when he and the claimant met on September 3, 1999, he thought it possible that the dust she had been exposed to in the workplace contained asbestos and that he had explained to her that "mesothelioma is caused by asbestos exposure" but that, because neither he nor claimant "could state with authority that she had in fact been exposed to asbestos[,] ... I was only able to say that the historical cause of her disease was unknown ...." Moreover, in deposition testimony, Dr. McKnight clarified that in September of 1999 it was his

"reasonable judgment" that claimant had been exposed to asbestos, but that he did not discuss with her what that actual exposure may have been.[5]

Given the ALJ's responsibility to evaluate and interpret testimony such as Dr. McKnight's, we conclude that DOES' decision that claimant gave timely notice is supported by substantial evidence and is reasonable in light of the language of the statute, *WMATA, supra,* 825 A.2d at 294. Thus, we affirm the Director's finding that claimant's notice was timely filed and that she is entitled to compensation.

*Affirmed.*

---

5.
> Q: Did you ever have any discussion with her about exposure to asbestos -
> A: No.
> Q: - and the mesothelioma?

A: No. The only discussion I had with her is the known and documented relationship between asbestos and the subsequent development of mesothelioma.